St. Lucie County Bank & Trust Company, *Appellant*, v. E. Grace Aylin, a Free Dealer; R. V. Waters and John F. Prindible, *Appellees*.

Division B.

Opinion Filed August 1, 1927.

Petition for Rehearing Denied October 19, 1927.

*Fee & Liddon,* Attorneys for Appellant;

*Nottingham & Anderson,* Attorneys for Appellees.

BUFORD, J.—In this case bill of complaint was filed alleging that the defendant Aylin, a free dealer, on the 11th day of October, 1926, was indebted to the complainant in the sum of $2,312.00 and made a note payable to the bank for the sum of $2,312.00, in words and figures, as follows:

"$2312.00          Fort Pierce, Fla., October 11, 1926.

On January 10th, 1927, after date I promise to pay to the order of St. Lucie County Bank & Trust Company, Twenty-three Hundred Twelve and no/100 Dollars with interest after maturity at the rate of eight per cent per annum until paid, for value received, negotiable and payable at St. Lucie County Bank & Trust Co. at Fort Pierce, Florida, and if not paid at maturity, this note may be placed in the hands of an attorney at law for collection; and, in that event, it is agreed and promised by the makers and endorsers, severally, to pay additional thereto all costs including reasonable attorney's fees that said Bank may incur or be put to in the collection hereof; having deposited with the said Bank as collateral security for the payment of this note, and any note given in extension or renewal thereof, and as security for the payment of any other liability or liabilities of the undersigned to said Bank whether now existing, or hereafter arising, the following securities, viz: Col. attached, the present market value of which is hereby estimated to be.............Dollars; and should the market value of the said securities decline below herein fixed, the undersigned hereby agrees to make payment on account of this obligation satisfactory to the said bank, or to deliver to said bank additional securities to the satisfaction of the said bank and for any other liabilities to said bank whether due or not due or hereafter arising, the undersigned also hereby gives to said bank a lien upon all property or securities given to or left in possession of the

said bank by the undersigned. For value received the undersigned hereby further agrees that upon either the nonpayment of this promise to pay, or upon the bankruptcy or the insolvency of the undersigned, or upon the non-payment of any of the liabilities of the undersigned to said Bank, or upon the failure of the undersigned within three days after date of mailing notice addressed to the undersigned, at his address as given by him at the time of the making of this note, and endorsed at the foot of this note or if not so endorsed at his last known address, to make satisfactory payment on account, or to furnish additional securities satisfactory to the said Bank in case of a decline as aforesaid, this note and all other obligations and liabilities of the undersigned to said Bank at the option of said Bank shall forthwith become due and payable without further demand or notice except the said Bank shall allow proper credit for unaccrued interest paid in advance; and the said Bank shall have full power and authority to sell, assign and deliver the whole or any part of the above mentioned property and securities or any part thereof, or any substitutes therefor, or of any additions thereto, at private or public sale, at the option of said Bank, after ten days' notice to the undersigned as prescribed by law. And at such sale the said Bank may become the purchaser of the whole any part of the said securities free from any right of redemption by the undersigned, which is hereby expressly waived and released. In case of sale of any cause, after deducting all the legal and other costs for collection, sale and delivery of said property, including attorney's fees, as hereinbefore provided, the said Bank may apply the residue of the proceeds of the sale or sales so made to pay this note; and then to pay any or all of the liabilities of the undersigned to said Bank, whether due or not due or hereafter arising, as said Bank shall determine, making

prompt rebate for interest on liabilities not due, returning the overplus, if any, to the undersigned; and the undersigned also agrees that the exercise, or the omission to exercise, by said Bank, of any of the rights and privileges hereby conferred upon said Bank shall not waive or affect any other or subsequent right to exercise the same. And the undersigned also agrees to be and remain liable to said Bank for any deficiency after such sale or sales so made, together with interest thereon at the rate of eight per cent per annum until the same is fully paid.

Address:

.................................E. Grace Aylin'';
that at the time this note was given certain other notes were deposited with the Bank and annexed to that note as collateral for the obligations therein mentioned. That prior to the making of that note, on the 9th of June, 1926, the bank had become the owner of two notes made by Aylin, Ira W. Upshaw, William Freegard and Florence A. Freegard to Charles C. Braswell, dated the 15th day of August, 1925, one for $11,000.00 due one year after date, and one for $10,750.00 due two years after date. The bill alleges that the note for $11,000.00 was not paid at maturity and that a clause in the mortgage given to secure the payment of the last mentioned two notes provided that in case of default in the payment of one of such notes both should become due and payable and the mortgage forecloseable. We infer from allegations of the bill that there were other notes secured by the same mortgage and that these two notes were held by the bank while other notes and the mortgage were held by other parties. The bill alleges that a suit had been instituted to foreclose the mortgage and the bank had been made a party defendant in that suit and that the property embraced in the mortgage would not bring more than 10% of the mortgage indebtedness.

The bill alleges that the complainant believes that Aylin is insolvent. The purpose of the bill is to procure a decree authorizing the complainant to apply the proceeds of the securities pledged and deposited with the $2,312.00 note to the payment of the Braswell notes in the aggregate sum of $21,750.00, together with interest and attorney's fees. The complainant in its bill set up certain rights in its behalf and presented its prayer in the following language:

"Your orator therefore says that its rights ought to be declared in the premises.

"Your orator further says that an accounting should be had of all sums due your orator and for which your orator has a lien on said collateral securities given to it under said collateral note, and that upon the adjudication of the rights of your orator and of all sums due your orator from said defendant E. Grace Aylin, and that your orator be declared to have the right to sell in accordance with the terms of said collateral note to the highest and best bidder for cash, the said collateral securities and that your orator be declared to have the right to become the purchaser of said collateral securities at said sale and to credit the proceeds of said sale on the obligation of said defendant, E. Grace Aylin, to your orator; that your orator also have the right to enforce as bailee for itself the said collateral securities against the defendants, R. V. Waters and John F. Prindible, in accordance with the said mortgages by an independent action or by supplementary action of this cause.

"FORASMUCH, THEREFORE, as your orator is without remedy in the premises, save in a court of equity, and to the end that E. Grace Aylin, a free dealer; R. V. Waters and John F. Prindible, parties defendant to this Bill of Complaint, may be required to make, full, true and direct answer to the same, but not under oath, answer under oath being hereby expressly waived.

"And your orator prays that the defendants R. V. Waters and John F. Prindible be required to discover the amount due from them on their respective notes. That an account be taken in this behalf under and by direction of this Court. That the said E. Grace Aylin, a free dealer, may be decreed to pay to your orator whatever sums appear to be due it upon the taking of such action, together with interest, costs, solicitor's fees, etc., by a short date to be fixed by this Court, that in default of such payment the said collateral may be sold as the Court may direct to satisfy said debt and all costs and all other sums of money now due or that may hereafter become due to this defendant; that in case of such sale, the proceeds thereof may be distributed to and among the parties to this cause as their respective interests may appear, and be adjudicated to this Court.

"Your orator further prays that the right of all parties to this suit shall be fully declared, set out and established by decree of this Court in and to all matters which are the subject matter of this Bill of Complaint; that your orator shall be decreed to have the right of purchase of any property which is the subject matter of this Bill of Complaint at any sale or sales which may be authorized by decree of this Court or by law. That your orator may have such other relief in the premises as equity may require and as to your orator may seem meet."

The bill of complaint was filed on the 26th day of November, 1926, one month and fifteen days after the making of the collateral note and the deposit with the bank of the notes placed there as collateral security and in this suit sought to be held as security for the two Braswell notes held by the bank.

What everbody knows the Courts are assumed to know and of such matters may take judicial cognizance. It is

a matter of common knowledge that banking institutions in transactions wherein they advance money with or without security dictate the terms upon which such money will be loaned or advanced, and the borrower in such cases must agree to the terms and conditions stated and made by the bank in order to procure the loan. Therefore, the Court may legally presume that the bank dictated the terms and conditions under which the sum of $2,312.00 was secured by Aylin from the bank and the terms and conditions under which the other notes were deposited by Aylin with the bank as collateral security. When this presumption is indulged in, as it was evidently indulged in by the chancellor, then the rule that, one of the parties to a contract having chosen the language applied and being responsible for any alleged uncertainty and ambiguity must suffer the result of having such language construed against him, may be invoked. That such is a sound and just rule has been held to be true by this Court in L'Engle v. Overstreet, 61 Fla. 653, 55 Sou. 381; Brown v. Beckwith, 60 Fla. 310, 53 Sou. 542; Capital City Bank v. Hilson, 59 Fla. 215, 51 Sou. 853; West Yellow Pine Co. v. Sinclair, 83 Fla. 118, 90 Sou. 828.

As has been seen, the bank was alleged to be the owner and holder of notes executed by the defendant in the court below and other parties to one Braswell in the sum of $21,-750.00, which notes, according to the allegations of the bill had matured under the terms of an agreement coincident with the making of the said notes and while the bank so being the owner and holder of said notes the defendant in the court below became indebted to the bank in a transaction with the bank in the sum of $2,312.00 and to secure the payment of that sum took as collateral certain other notes aggregating something like $30,000.00. The indebtedness of $2,312.00 was evidenced by a note for $2,312.00

dated October 11, 1926, and due January 10, 1927. The complainant contends that the following language embraced in this note, that is:

"having deposited with the said bank as collateral security for the payment of this note, and any note given in extension or renewal thereof, and as security for the payment of any other liability or liabilities of the undersigned to said bank whether now existing or hereafter arising, the following securities, viz: Col. attached, the present market value of which is hereby estimated to be ――― Dollars; and should the market value of the said securities decline below herein fixed, the undersigned hereby agrees to make payment on account of this obligation satisfactory to the said bank, or to deliver to said bank additional securities to the satisfaction of the said bank, and for any other liabilities to said bank whether due or not due or hereafter arising, the undersigned also hereby gives to said bank a lien upon all property or securities given to or left in possession of the said bank by the undersigned. For value received the undersigned hereby further agrees that upon either the non-payment of this promise to pay, or upon the bankruptcy or the insolvency of the undersigned, or upon the non-payment of any of the liabilities of the undersigned to said bank, or upon the failure of the undersigned within three days after date of mailing notice addressed to the undersigned, at his address as given by him at the time of the making of this note, and endorsed at the foot of this note or if not so endorsed at his last known address, to make satisfactory payment on account, or to furnish additional securities satisfactory to the said bank in case of a decline as aforesaid, this note and all other obligations and liabilities of the undersigned to said bank at the option of said bank shall forthwith become due and payable without further demand or notice except the

said bank shall allow proper credit for unaccrued interest paid in advance; and the said bank shall have full power and authority to sell, assign and deliver the whole or any part of the above mentioned property and securities or any part thereof, or any substitutes therefor, or of any additions thereto, at private or public sale, at the option of said bank, after ten days notice to the undersigned as prescribed by law. And at such sale the said bank may become the purchaser of the whole any part of the said securities free from any right of redemption by the undersigned, which is hereby expressly waived and released.'' authorizes the application of the collateral mentioned to the two Braswell notes held by the bank.

We think that the construction which should be given to this contract under which the collateral security was placed in the bank, is that the general words, that is: ''any other liability or liabilities of the undersigned to said bank,'' following the enumeration of specific things, that is, ''security for the payment of this note and any note given in extension or renewal thereof'' must be restricted to things of the same kind as those specifically enumerated.

Certainly it is not clear that the pledger intended the collateral pledged to stand as security for the two Braswell notes. Neither is it reasonable to suppose or to assume from the allegations of the bill that it was the intention of the pledger to secure the payment of the Braswell notes with this collateral. It is unreasonable to assume that one would deposit collateral to secure the payment of a past due obligation without any agreement as to the renewal of such obligation or without any agreement as to an extension of time in which to meet such past due obligation. The contract not being clear that it was the intention of both parties that the collateral was pledged to

secure the payment of the Braswell notes and it being un-
reasonable to assume from the allegations of the bill of
complaint that such was a fact, the complainant in the
court below must suffer the result of having the contract
construed against its contention in this regard.

In Gillet v. Bank of America, 160 N. Y. 549, 55 N. E.
292, Mr. Justice Martin, speaking for the Court of Appeals
of New York, says:

"Where a doubt exists as to the meaning of words,
resort may be had to the surrounding facts and circum-
stances to determine the meaning intended. If the lan-
guage of a promise may be understood in more senses than
one, it is to be interpreted in the sense in which the prom-
isor had reason to believe it was understood. White v.
Hoyt, 73 N. Y. 505. In the construction of written con-
tracts it is the duty of the court, as near as may be, to
place itself in the situation of the parties, and from
a consideration of the surrounding circumstances, the
occasion, and apparent object of the parties, to de-
termine the meaning and intent of the language em-
ployed. Indeed, the great object and practically the
only foundation of rules for the construction of con-
tracts is to arrive at the intention of the parties.
This is a most conspicuous and far-reaching rule, and in-
volves the nature of the instrument, the condition of the
parties, and the objects which they had in view, and, when
the intent is thus ascertained, it is to be effectuated, unless
forbidden by law. "Contracts are not to be interpreted
by giving a strict and rigid meaning to general words or
expressions without regard to the surrounding circum-
stances or the apparent purpose which the parties sought
to accomplish." Robertson v. Electric Co., 146 N. Y. 20,
24, 40 N. E. 390; Halpin v. Insurance Co., 120 N. Y. 73,
23 N. E. 989, 8 L. R. A. 79; Smith v. Kerr, 108 N. Y. 31,

37, 15 N. E. 70; Coleman v. Beach, 97 N. Y. 545, 553; Parshall v. Eggert, 54 N. Y. 18, 23; French v. Carhart, 1 N. Y. 102; Colwell v. Lawrence, 38 N. Y. 74; Cotheal v. Talmage, 9 N. Y. 554; Booth v. Mill Co., 74 N. Y. 15; Beach Mod. Cont., Sec. 702; Bish. Cont., Sec. 380; Lawson, Rights, Rem. & Prac., Sec. 2316.''

From a consideration of all the allegations of the bill of complaint with the contents of the exhibits thereto attached, we are of the opinion that the liabilities to the bank which were contemplated by the parties were those which arose or which might thereafter arise out of transactions between the bank and the plaintiff in error and did not include the liability arising out of a purchase by the bank or assignment to the bank from third parties. This view is supported by West Yellow Pine Company v. Sinclair, *supra;* Brock v. Perkins, 35 Law Ed. 314; Hanover National Bank v. Sudduth, 54 Law Ed. 115, and Gillet v. Bank of America, *supra.*

It appears to us that the demurrer to the bill of complaint was properly sustained and that the same should be affirmed. It is so ordered.

Affirmed.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., concurs in the opinion.

STRUM AND BROWN, J. J., concur in the conclusion.