119 So.2d 85 (1960)
Duncan MacGREGOR, Appellant,
v.
MIAMI HERALD PUBLISHING CO., a Florida Corporation, Appellee.
No. 1416.
District Court of Appeal of Florida. Second District.
March 23, 1960.
B.F. Paty, Jr.; Paty & Downey, West Palm Beach, for appellant.
Wm. C. Steel; Scott, McCarthy, Preston, Steel & Gilleland, Miami, for appellee.
ALLEN, Chief Judge.
The appellant was the plaintiff below in a libel action. The appeal is from a final judgment entered subsequent to an order granting defendant's motion for summary judgment.
On January 11, 1958, the defendant published in its paper a news item to the effect that the Supreme Court of Florida had upheld the revocation of the plaintiff's real estate broker's license on the grounds that the plaintiff was guilty of deception and breach of trust. This news dispatch was received by the defendant from the United Press at 4:45 p.m. on January 10, 1958, and it was factually erroneous in part. It was published with only insignificant changes, and a headline appropriate to the content of the news release was supplied by an editor for the newspaper.
Also on January 10, 1958, but several hours after receipt of the dispatch from the United Press by the defendant, the Associated Press released a dispatch at 9:10 *86 p.m. which did correctly state the facts. It appears that the time of release of the dispatch was shortly after the completion of the editing of the Palm Beach edition of defendant's paper.
The error in the United Press Dispatch was in reporting that the Supreme Court upheld the revocation of the plaintiff's license. Actually, the Supreme Court upheld the right of the Florida Real Estate Commission to suspend the plaintiff's license; and the real estate commission had not yet acted, although it had instituted proceedings charging the plaintiff with misconduct.
On January 17th the plaintiff notified defendant that he intended to bring a civil action for libel on account of the false statement defendant had published, which was the United Press news dispatch. Defendant asserts that it received this letter January 20. Also on January 20th the defendant received a news dispatch from the United Press to the effect that the prior release was inaccurate; and the January 20th release retracted the statements made in the January 10th story and corrected them. This retraction and correction was promptly printed by the defendant on January 21st in the Palm Beach edition of the paper. No significant alterations were made and an appropriate headline was furnished which was printed with most of the headline appearing above the fold in the newspaper.
The court granted defendant's motion for summary judgment, holding there was nothing in the record on which to predicate a finding that the defendant acted in a negligent, reckless, or careless manner in reproducing the news dispatch. The court relied on the case of Layne v. Tribune Co., 1933, 108 Fla. 177, 146 So. 234, 236, 86 A.L.R. 466, holding that the principles expressed in that case were not changed by sections 770.01 and 770.02, Florida Statutes, F.S.A.
It is the contention of the appellee, and such was the holding of the lower court, that the case of Layne v. Tribune Company controls the question of law in this case. It is the contention of the appellant, however, that the law applicable is governed not only by Layne v. Tribune Company, supra, but also by Florida Statutes, § 770.01 and § 770.02.
The facts in Layne v. Tribune Company were that the plaintiff brought an action against the publisher of the Tampa Morning Tribune for the alleged publication of two press dispatches from Washington, D.C. One was sent by the Associated Press and the other by Universal Service. The first dispatch told of the action of the District of Columbia Supreme Court in sustaining the demurrer of the defendant, a United States Representative from Illinois, to an indictment for the possession of whiskey. The dispatch told about the Illinois congressman and his former secretary having been indicted after prohibition agents had charged they found trunks containing liquor had been delivered to his office in the House Office Building. The "former secretary" referred to was John Layne, the plaintiff. The Universal Service Dispatch of July 7th stated that an appeal might be taken from the ruling of the District of Columbia Supreme Court. The Universal Service Dispatch described in detail the terms of the indictment and explained the court's ruling. It also stated that "John Layne, described as his secretary, was indicted with Dennison, * * *". A final judgment was entered in favor of the Tribune Company, which judgment was affirmed by the Florida Supreme Court.
The Supreme Court, in its opinion, said:
"Turning now to the allegations of the amended declaration in the case before us, we find simply a situation wherein a newspaper is charged with having printed an ordinary news dispatch reciting that the plaintiff John Layne, had been indicted with one Dennison, a `dry' congressman, for violation of the national liquor laws, which recital in so far as Layne is concerned, was untrue.

*87 "Conceding the proposition to be true that it is libel per se in ordinary cases to publish of and concerning another the false declaration that he has been indicted for a criminal offense, it does not necessarily follow that this rule holds true with respect to that class of publication which constitutes simply a reflection in a local newspaper's columns of what originated as a national news broadcast sent out by a reputable news service agency, and believed to be true when it was printed locally. To hold otherwise would mean that newspapers at their peril published purported items of news, against the falsity of which no ordinary human foresight could effectually guard and at the same time keep up the prompt daily service expected of present day newspapers. It would also amount to an application of the doctrine of authorship by adoption of libel to situations which by no rule of reason can properly be brought within that rule, since the rule itself rests upon a legal presumption that one who knowingly publishes another's false defamatory statement, thereby makes the libel his own. Any such presumption is negatived when it is made to appear that the circumstance of the reiteration was casual and without anything appearing on the face of the matter published, to suggest preliminary verification in order to guard against obvious injury if the report is published and proves false.
"In reprinting in its news columns matters of reported news items broadcast by such established news agencies as the Associated Press, Universal News Service, and the like, a newspaper is simply acting as a local `screen' from which is reflected, without any authorship of its own, dispatches composed and sent out by others. That such is the situation is so well known and generally acknowledged that the courts, under the doctrine heretofore referred to in St. Lucie County Bank & Trust Co. v. Aylin, supra, [94 Fla. 528, 114 So. 438] must take judicial notice of the practice. And taking judicial notice of the practice, the courts must apply to the new condition which the practice has brought about, a rule of reason with respect to legal presumptions that would otherwise flow from the publication of libelous matters such as occasionally creep into the best regulated agencies for collecting and disseminating the news.
"We hold, therefore, that a declaration for libel predicated upon the alleged publication of a false news dispatch as to which neither the publisher, nor his agents, may be regarded as the author, must show either wantonness, recklessness, or carelessness in its publication, or be counted upon as a libel per quod, in order to set up a good cause of action."
The main contention of the appellant is that The Miami Herald, after notice from the appellant, failed to follow the provisions of Florida Statutes, § 770.02, F.S.A., in that it actually never made an apology but only quoted from the corrected press dispatch of the United Press and that the headlines were not as conspicuous as they were in the original article.
The appellee urges that under the circumstances of this case there was no necessity for the Miami Herald to retract as the legal position of the Miami Herald was similar to that of the Tampa Tribune, and that the complaint did not set up facts which would take it out of the Tribune case.
The decision of the Supreme Court of Florida in Layne v. Tribune Co., supra, was published February 3, 1933. Chapter 16071, Laws of Florida, 1933 (§ 770.01 and § 770.02, Florida Statutes, 1959, F.S.A.) was passed at the legislative session of 1933, and was, therefore, subsequent to the decision of the Supreme Court in Layne v. Tribune Company, supra.
*88 The statute provides that before any civil action is brought for publication, in a newspaper or periodical, of a libel, the plaintiff shall, at least five days before instituting such action, serve notice in writing on defendant, specifying the article, and the statements therein, which he alleges to be false and defamatory. If it appears upon the trial that said article was published in `good faith, that its falsity was due to an honest mistake of the facts, and that there were reasonable grounds for believing that the statements in said article were true, and that within ten days after the service of said notice a full and fair correction, apology and retraction was published in the same editions or corresponding issues of the newspaper or periodical in which said article appeared, and in as conspicuous place and type as was said original article, then the plaintiff in such case shall recover only actual damages.
The appellant contends that since the headline of the news dispatch was written by an editor of the Miami Herald, that the protection of the principles of law set forth in the case of Layne v. Tribune Company, supra, were not applicable. The appellant is correct that the headline in the article is supplied by the newspaper publishing items from a recognized news gathering agency such as the United Press or the Associated Press. If the supplied headline should extend beyond the context of the article reproduced from the news gathering agency, adding to or subtracting from such article so that the headline in itself could become libelous, then the newspaper would not be protected under the principles set forth in Layne v. Tribune Company, supra. See Annotation 40 A.L.R. 583, et seq., also Annotation 59 A.L.R. 1061.
This court will take judicial notice of the fact that the headlines appearing in the newspapers are written by a member of the staff of the newspaper and it is generally not a part of the dispatches from the recognized news agencies. The headline appearing in this case is as follows:

"Realtor's License Loss Upheld By High Court

MacGregor Guilty of Deception in `Restricted' Deal."
An examination of the article appearing in the West Palm Beach edition of the Miami Herald shows that the headline follows the news item and, therefore, could not be considered an independent libel although written by an editor of the defendant newspaper.
We are of the opinion that under the facts of this case the law applicable is that enunciated by the Florida Supreme Court in Layne v. Tribune Company, supra, and that such holding is not affected or changed by Florida Statutes, § 770.01 and § 770.02, F.S.A.
Affirmed.
KANNER, J., and STEPHENSON, GUNTER, Associate Judge concur.