In the Matter of D. Dean BARNARD, Bankrupt.

Sonia URANSKY, as Trustee in Bankruptcy of D. Dean Barnard, Plaintiff,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF FORT MYERS and Miles Brown and Mary Brown, Defendants.

Bankruptcy No. 77–601–Orl–P.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Dec. 14, 1979.

Diane L. Jensen, Ft. Myers, Fla., for plaintiff.

Gerald W. Pierce, Ft. Myers, Fla., for defendant.

Malka Isaak, Tampa, Fla., for Miles and Mary Brown.

## FINGINGS OF FACT AND CONCLUSIONS OF LAW

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS an adversary proceeding instituted by Sonia Uransky, the Trustee for the estate of D. Dean Barnard (Barnard). The complaint seeks a determination of the extent of a real estate mortgage held by First Federal Savings & Loan Association of Fort Myers (First Federal), one of the defendants involved in this adversary proceeding. The other defendants, Miles Brown and Mary Brown (the Browns), although named as parties of interest by the trustee, do not claim any interest in this controversy. At the duly scheduled final evidentiary hearing, this Court having heard testimony of witnesses and having considered the entire record together with the exhibits and briefs submitted by counsel for the Trustee and First Federal, now finds and concludes as follows:

On May 3, 1974, the Browns executed a note and mortgage to First Federal which note and mortgage secured a loan granted to the Browns by First Federal in the principal amount of $350,000. The note and mortgage further provided that the mortgage shall also secure "any and all future advances paid by Mortgagee to Mortgagor . . ." The real property covered by said mortgage is commonly referred to as the San Mateo Subdivision located in Lee County, Florida.

On November 17, 1976, Barnard purchased the unsold lots in the San Mateo Subdivision from the Browns. As part of this purchase Barnard entered into a Mortgage Modification Agreement with the Browns and with First Federal. Pursuant to this agreement, Barnard agreed to assume and pay the Browns mortgage to First Federal. The Mortgage Modification Agreement, which was prepared by First Federal's attorneys, was completely silent as to any future advances to be made by First Federal either to the Browns or to Barnard. It is further without dispute that there were no discussions or negotiations between Barnard and First Federal concerning the future advances clause either prior to or concurrent with the signing of the Mortgage Modification Agreement. At the time the Mortgage Modification Agreement was signed by Barnard, this Court is satisfied that Barnard did not intend to borrow any monies from First Federal which was to be secured by the Brown mortgage.

Shortly after the execution of the Mortgage Modification Agreement, Barnard who at the time was an attorney licensed to practice law in the State of Florida, was involved in the closing of a sale by the Browns to Augustus and Anna Scheier (the Scheiers) of Lot 47 in the San Mateo Subdivision. He also handled the closing of a mortgage on said property from the Scheiers to First Federal which was to secure money borrowed from the Scheiers for the purchase of said property. This lot was one that had not been sold by the Browns to Barnard, and Barnard's involvement in the sale and mortgage was only as an attorney rather than as an owner. As a part of the transaction, Barnard was to issue a Mortgagee's Title Insurance Policy to First Federal and to accomplish this, he was entrusted with the sum of approximately $38,000 which was part of the proceeds of the mortgage loan made to the Scheiers by First Federal. This was given to Barnard for the purpose of paying off an outstanding mortgage on Lot 47 to Coast Federal Savings and Loan and the payment of outstanding real property taxes on said property, the

property involved in this transaction. It is without dispute that this Mortgage Modification Agreement did not contain a future advances clause, the same clause which was part of the original mortgage between the Browns and First Federal.

Barnard failed to pay off and obtain a satisfaction for the Coast Federal Mortgage and further failed to pay the outstanding property taxes excluding this property.

On March 3, 1977, Barnard suffered a gunshot wound and was hospitalized first in Lee Memorial Hospital and subsequently in Tampa Veteran's Hospital until June 10, 1977. While he was in Lee Memorial Hospital, First Federal discovered that the funds it had entrusted to Barnard on the Scheier transaction were not used for the purpose they were given for. First Federal then consulted with their attorneys who suggested that Barnard be asked to sign a future advance note to be secured by the Brown mortgage to cover the funds necessary to pay off the Coast Federal mortgage, the property taxes, and other necessary expenses incurred by First Federal as the result of the conversion of these funds by Barnard.

First Federal prepared such a future advance note which was executed by Barnard on approximately March 21, 1977, while still in the hospital. The exact circumstances surrounding the execution of said note are unknown since no representatives of First Federal were present during its execution and since Barnard himself has only a very vague recollection of signing the note. The future advance note was also signed by the Browns, either prior to or subsequent to its execution by Barnard. The future advance note in the amount of $40,500 contains the following language:

> "This is a Future Advance Note secured by Mortgage dated May 3, 1974, recorded in O.R. Book 1034/Page 1574, and Modified Nov. 17, 1976, and recorded in O.R. Bk. 1183 at Page 789, Public Records, Lee County, Florida."

First Federal then paid off the Coast Federal mortgage and also paid the outstand-

ing property taxes and other expenses in an amount totaling $40,500.

The matter is presented to this Court by a First Amended Complaint filed by the Trustee seeking to have the validity and extent of the lien of First Federal's mortgage from the Browns determined. In due course, First Federal filed its Answer in which it denied the allegations that the future advance note was not secured by the Browns mortgage and alleged certain affirmative defenses.

■ It is the contention of First Federal that the clear and unambiguous language in the Browns mortgage concerning future advances, the clear and unambiguous language in the Mortgage Modification Agreement in which Barnard assumed all of the obligations under the Browns mortgage, and the clear and unambiguous language in the note that it is a future advance note secured by the Brown's mortgage precluded the consideration of any extrinsic evidence and, accordingly, the note executed by Barnard on May 21, 1977, is secured by the Mortgage. This contention brings into play, of course, the threshold question of the applicability of the parole evidence rule. While no one can dispute the validity of the parole evidence rule which bars the admissibility of evidence to vary or contradict a written contract, this rule is applicable only where the written contract is unambiguous. In the present case, there are three separate documents which must be considered in pari materia. When one considers these documents, it is evident there are at least several ambiguities which call for an explanation by way of parole evidence. For example, does the term "Mortgagor" in the future advances clause of the Browns mortgage apply only to the Browns or was it also intended to apply to Barnard and the assignees of the Browns mortgage? Next, the complete absence of any reference to the future advances clause in the Mortgage Modification Agreement, no doubt creates an ambiguity concerning the true intention of the parties. In any event, it appears that the cases are virtually unanimous in stating that the intention of the parties is the polestar in determining whether or not a particular loan is covered by a prior mortgage or security agreement containing a future advance clause. *McEwen v. Growers' Loan & Guaranty Co.*, 139 So. 805 (Fla. 1932); *Emporia State Bank & Trust Co. v. Mounkes*, 214 Kan. 178, 519 P.2d 618 (1974); *In re Glawe*, 6 UCC Rep.Serv. 876 (U.S.Dist. Ct.E.D.Wis.1969). The use of parole testimony concerning the intention of the parties is, therefore, both necessary and proper.

■ This matter can easily be concluded by the simple finding that Barnard is not the "Mortgagor" as contemplated in the future advances clause of the Browns mortgage. This particular issue, to-wit, whether the future advances clause in the mortgage includes advancements made by the Mortgagee to the subsequent purchaser from the Mortgagor who assumes the mortgage, has apparently been considered in only one reported case. *Walker v. Whitmore*, 165 Ark. 276, 262 S.W. 678 (1924). The facts of this case are substantially similar to the facts under consideration by this Court. The Arkansas Supreme Court, *Walker v. Whitmore*, supra held that the word "Grantor" in a deed of trust (similar to Mortgagor in a mortgage) refers only to the person executing the original deed of trust and not to any subsequent purchaser of the property, even though the subsequent purchaser has assumed payment of the note. In applying the rationale of the *Walker* case, supra to the present matter, the conclusion is inescapable that the future advances clause in the Browns' mortgage covers only future advances made by First Federal to the "Mortgagor", i. e., to the Browns and not to Barnard. Barnard was not the "Mortgagor". Therefore, any future advance made by First Federal to Barnard could not possibly be covered by the future advances clause of the Browns' mortgage, but rather would require the execution of a new mortgage by Barnard to First Federal.

But even if Barnard were included in the term "Mortgagor" it would be of little consolation to First Federal because, as indicated in the cases cited above, the intention of the parties at the time the mortgage is

signed is of paramount importance. Since Barnard was not a party to the Brown mortgage, the intention there would be immaterial and so the intention of Barnard and First Federal at the time Mortgage Modification Agreement was signed would be crucial.

It is undisputed that there were no negotiations between Barnard and First Federal concerning future advances; Barnard had no intention to request or obtain future advances. From all this it must follow that the parties intended to deal on a "single loan" basis. This conclusion is further buttressed by the fact that it was First Federal's attorneys who prepared the Mortgage Modification Agreement so that the ambiguities must be construed against First Federal. *United States v. American National Bank*, 255 F.2d 504 (5th Cir. 1958) quoting from *St. Lucie County Bank & Trust Co. v. Aylin*, 94 Fla. 528, 114 So. 438 (1927). This conclusion is further supported by a well recognized principle that the law does not favor "dragnet clauses" of the type found in the Brown mortgage. *St. Lucie County Bank & Trust Co. v. Aylin, supra; Emporia State Bank & Trust Co. v. Mounkes, supra.*

Even assuming but not admitting that this record supports the finding that it was the intention of the parties to secure future advances, the mortgage held by First Federal, the particular obligation under consideration between Barnard and First Federal could not come within the purview of the Brown mortgage because it is not the same kind or class of obligation as the principal obligation secured by the mortgage. *Emporia State Bank & Trust Co. v. Mounkes, supra.* The principal obligation secured by the Brown mortgage had its genesis in the purchase of the San Mateo Subdivision and development of same by the Brown's. The obligation of Barnard in the amount of $40,500 which is claimed to be secured by the future advance note and mortgage was not a loan in the conventional sense, let alone a purchase money obligation by funds credited to Barnard in order to make whole the First Federal Savings &

Loan for the loss which resulted from the embezzlement of funds by Barnard entrusted to him. Thus it is clear that the original Brown mortgage was never intended to cover such an obligation and the note and mortgage signed by Barnard in March had nothing to do with the original purchase money mortgage, but was executed solely at the instance of First Federal to secure the shortage in Barnard's escrow account. It was hardly an obligation which could be the same as a purchase money mortgage obtained by the Mortgagor in connection with the acquisition of some land.

In light of the foregoing, it is the conclusion of the Court that a Final Judgment should be entered in favor of the Plaintiff, Sonia Uransky, as Trustee of the Estate of D. Dean Barnard, Bankrupt, and against the Defendant, First Federal Savings and Loan Association of Fort Myers, declaring that the sum of $40,500 loaned to Barnard by First Federal as evidenced by the note dated March 21, 1977, constitutes an unsecured claim against the Bankrupt estate and is not secured by the mortgage from Browns to First Federal, which mortgage was later assumed by Barnard.