468 So.2d 399 (1985)
ROBERT C. ROY AGENCY, INC., Robert C. Roy and Joyce S. Roy, His Wife, Appellants,
v.
SUN FIRST NATIONAL BANK OF PALM BEACH, Appellee.
No. 84-917.
District Court of Appeal of Florida, Fourth District.
April 24, 1985.
Rehearing Denied May 28, 1985.
*400 James M. Tuthill of Christiansen, Jacknin & Tuthill, West Palm Beach, for appellants.
Peter J. Aldrich of Gunster, Yoakley, Criser & Stewart, P.A., Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal from an adverse final judgment in a replevin action entered against the owner of a coin collection who had claimed in the trial court that the bank to which the collection had been pledged did not have any right to possession. We affirm.
In doing so we uphold the "dragnet" clause involved, and conclude the trial court was correct in enforcing it against a preexisting, contingent liability. We reject appellant's position that such clause was enforceable only as to those obligations incurred at the time the security was pledged or incurred thereafter.
The facts reflect a series of financial transactions involving the appellee bank on the one hand and, on the other, Robert C. Roy and Joyce S. Roy, appellants, as well as Robert C. Roy Agency, Inc. The ongoing series began in 1978 when the agency executed a guaranty agreement in favor of the bank to induce extension of credit to appellants, who thereafter borrowed $225,000 in 1980 on the security of their home. In 1981, when appellants' loan matured, it was extended for an additional fourteen months.
During the extension period of appellants' residential loan, the agency pledged appellants' coin collection at the time it obtained a loan of $37,500 and executed a note therefor. The printed portion of the note provides in one sentence that the security is pledged for the payment of the particular note. It then adds a subsequent sentence, stating:
The collateral is also pledged as security for all other liabilities (primary, secondary, direct, contingent, sole, joint or several) due or to become due or which may be hereafter contracted or acquired of each maker (including each maker and any other person) to Bank.
Appellants executed a guaranty contemporaneous with the agency's note. One year later the agency and the bank repeated the process, on this occasion the loan being in the sum of $11,665.42. The same printed note form was used, expressly pledging the *401 coin collection  not only for the new note, in one sentence, but also for all other liabilities, in another sentence. Appellants' argument ignores the existence of two sentences. Appellants executed a guaranty as they had in the earlier instance.
At the time the agency pledged the coin collection, its guaranty of appellants' debts was still outstanding. Accordingly, when appellants defaulted in their residential loan and the bank successfully foreclosed the outstanding mortgage which secured the loan, it retained possession of appellants' coin collection.
Appellants claim foul, in that there was no intention to subject their coin collection to their liability for the residential loan which they made and which the agency had guaranteed. Interestingly enough, however, aside from the clear and unambiguous language of the second sentence of the two notes which tie the security to "all other liabilities ... due or to become due," the notes also specifically mention the residential mortgage.
The main point is that the trial court correctly concluded the clear, unambiguous language of the note included the preexisting obligations made or guaranteed.
The only Florida case upon which appellants rely gives them no assistance. In St. Lucie County Bank & Trust Company v. Aylin, 94 Fla. 528, 114 So. 438 (1927), the defendant had executed a note to the Bank, depositing with the Bank certain other notes as collateral security. The pertinent clause in Aylin's note stated the collateral security was "for payment of this note, and any note given in extension or renewal thereof, and as security for the payment of any other liability or liabilities of the undersigned to said Bank whether now existing, or hereafter arising ... ." Id. 94 Fla. at 530, 114 So. at 438 (emphasis added).
Whether by purchase or assignment, before the subject note was executed the Bank had come to own two notes of Aylin to a third party, one Braswell. One of these notes was already in default when acquired by the Bank, and payment of the other became accelerated, by terms of the securing mortgage, because of the default on the first note. The Bank sought to apply the security Aylin gave as collateral for the new note to payment of the Braswell notes, as the proceeds from the property mortgaged to secure the Braswell notes would not satisfy the entire debt.
The Supreme Court, presuming that the dragnet clause language was furnished by the Bank and that the borrower had no choice but to accept it in order to procure the loan, said any alleged uncertainty and ambiguity of the language was the Bank's responsibility, and the language would be construed against the Bank. Id. at 535, 114 So. at 440. The Court held the dragnet clause language, following, as it did, the statement that the security was for the payment of the particular note or an extension or renewal thereof, must apply only to "things of the same kind as those specifically enumerated." Id. at 537, 114 So. at 441.
The Court continued:
Certainly it is not clear that the pledger intended the collateral pledged to stand as security for the two Braswell notes. Neither is it reasonable to suppose or to assume from the allegations of the bill that it was the intention of the pledger to secure the payment of the Braswell notes with this collateral. It is unreasonable to assume that one would deposit collateral to secure the payment of a past due obligation without any agreement as to the renewal of such obligation or without any agreement as to an extension of time in which to meet such past due obligation. The contract not being clear that it was the intention of both parties that the collateral was pledged to secure the payment of the Braswell notes and it being unreasonable to assume from the allegations of the bill of complaint that such was a fact, the complainant in the court below must suffer the result of having the contract construed against its contention in this regard.
Id. at 537-38, 114 So. at 441.
After citing case law to the effect that where doubt exists as to the meaning and *402 intent of language employed in a contract, resort may be had to the surrounding facts and circumstances, the Court concluded:
From a consideration of all the allegations of the bill of complaint with the contents of the exhibits thereto attached, we are of the opinion that the liabilities to the bank which were contemplated by the parties were those which arose or which might thereafter arise out of transactions between the bank and the plaintiff in error and did not include the liability arising out of a purchase by the bank or assignment to the bank from third parties.
Id. at 539, 114 So. at 441 (citations omitted).
We think Aylin is inapposite to the present case for several reasons. First, the dragnet clause here, unlike that in Aylin, rather explicitly includes every conceivable type of liability of the appellants to the Bank, past, present or future and whether contracted or acquired. Second, the preexisting obligation in the instant case to which the Bank sought to apply the security had been extended and thus was not in default when the security was given as collateral for a new loan and the parties agreed to the dragnet clause. Third, when a third loan was obtained, the appellants again pledged the same coin collection as security for the new loan, as well as for any and all other liabilities. Fourth, the liabilities pertinent here were always to the Bank and not acquired by the Bank from a third party as in Aylin (though the dragnet clause that applies here covers such a contingency as well). In sum, as the language of the promissory notes in the present case is clear and unambiguous, the intention of the parties is derived therefrom, rather than from surrounding facts and circumstances. Gendzier v. Bielecki, 97 So.2d 604 (Fla. 1957).
For the benefit of bench and bar, we relate our research on the general subject of enforcing dragnet clauses.
Hancock County Bank v. American Fletcher National Bank and Trust, 150 Ind. App. 513, 276 N.E.2d 580 (1971), was factually similar to the present case, with one major difference. Hancock County concerned three promissory notes, the first and third of which were unsecured, and the second of which was secured by a coin collection. This second note had a dragnet clause subjecting the coins to other liabilities due or to become due to the bank. The second note was paid off by the maker's estate after he died, which then sought return of the collection. The bank refused, saying that the collateral would be held for repayment of the other two debts by virtue of the dragnet clause. The appellate court found that the agreement was valid and that it could be validly applied to the other two notes, but agreed with the trial court that the coins must be returned to the estate. Vital to this conclusion was the existence of evidence, which was introduced without objection, that the parties did not intend for the coin collection to serve as security for the other notes. The case does not therefore answer the question with which we are faced here, for we have only the stipulated fact that there was no extrinsic[1] evidence that the parties did intend for the collateral to carry over. This is quite different from affirmative evidence of negative intent, and does not answer the question as to whether evidence of intent should be introduced over objection.
A survey of cases from other states indicates general acceptance of dragnet clauses but varied reasons for their application or non-application. In Farmers and Mechanics Bank v. Davies, 97 Ill. App.3d 195, 52 Ill.Dec. 655, 422 N.E.2d 864 (1981), a total of nineteen promissory notes were in question. Of these, thirteen referred to a real estate mortgage as their security and the other six did not. The mortgage referred only to the thirteen, but had the standard dragnet clause providing for continuing security. In this case, the Illinois *403 court held that parol evidence of the parties' intent was not admissible because the mortgage clearly and unambiguously set forth intent for the collateral to apply only to thirteen of the notes.
Following the same principle, although to the benefit of the mortgagee rather than the mortgagor, was First National Bank & Trust Co. v. Lygrisse, 231 Kan. 595, 647 P.2d 1268 (1982). In Lygrisse, an earlier mortgage with a dragnet clause was referred to in a security agreement arising from a second transaction and in several renewal notes, although not in the final renewal. The Kansas court applied basic contract law that a tribunal will derive the parties' intent from their agreement so long as it is unambiguous, and upheld use of the dragnet clause.
A slightly different approach was taken in Everett Credit Union v. Allied Ambulance Services, Inc., 12 Mass. App. 343, 424 N.E.2d 1142 (1981), arising from a 1971 note secured by a mortgage with a dragnet clause. This mortgage was not referenced in a 1975 security agreement pledging an interest in new ambulances on a second note, but it was sought as security under the second note. The Massachusetts court held that while dragnet clauses are often narrowly construed where their effect will be oppressive, there was no evidence of oppression. Furthermore, there was no evidence of the parties' intent; so the court held that the 1971 mortgage covered the 1975 note.
Another Massachusetts case was Financial Acceptance Corporation v. Garvey, 6 Mass. App. 610, 380 N.E.2d 1332 (1978), in which notes were executed in 1968 and 1970. The 1970 note had a mortgage with a dragnet clause. Both notes were rolled over in 1972, but the mortgage was not discharged. When the assignee of the notes tried to foreclose, another party who received a note and mortgage in 1974 on the same property resisted. The Garvey court found that "[t]he guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage." Id. at 1335. Relevant to the intent was the fact that the rollover notes were of the same general kind of the original debt and that they bore a close relationship to the other debt as continuations of the same debt. The parties had thus evinced an intent that the old mortgage secure the new debt, so the dragnet clause was given effect.
An equitable approach was made by Utah in the case of First Security Bank of Utah v. Shiew, 609 P.2d 952 (Utah 1980). In order to buy a home, the Shiews had executed a note secured by a mortgage on the home; the mortgage contained a dragnet provision. The Shiews later executed another note secured by their cattle and feed, but this security agreement had a merger clause and did not refer to the mortgage. When the residence was destroyed by fire, the bank sought to apply insurance proceeds against the security agreement, which was in default. The Utah court observed that although there is not yet a majority rule with respect to dragnet clauses, "there is a consensus that dragnet clauses are not favored in equity and that they should be carefully scrutinized and strictly construed." Id. at 955. The court then examined treatises and other states' decisions. In deciding that there was no evidence that the mortgage was intended to stand as security for the second agreement, the court noted that the dragnet was boilerplate language inserted by the bank, that it was not negotiated and that it had probably never come to the maker's attention until it was sought to be enforced.
A case also cited by the Roys and the agency is Wong v. Beneficial Savings & Loan Ass'n, 56 Cal. App.3d 286, 128 Cal. Rptr. 338 (1976), which involved eight parcels of land, each with its own note and deed of trust. Each deed of trust had a dragnet clause. When the loans went into default, the lender scheduled them for sale, and the maker sought to tender the money for three of the eight parcels. On Wong's suit to compel acceptance of his tender, the *404 court held that the parties had intended that each parcel stand as security for all of the debts. In so holding, the court said, however, that the burden is on the proponent to show that the collateral was intended to be pledged for another debt other than the primary one. the proponent could and did meet that burden by showing both a relationship between the two loans and reliance on the security. There is also a suggestion in Wong that equitable considerations might play a part in decisions, because the court points out that Wong had come before it with unclean hands.
The question was different in Willis v. Rabun County Bank, 249 Ga. 493, 291 S.E.2d 715 (1982), in which a four-member partnership took a loan from the bank, evidenced by an agreement providing that each of the partners was individually liable for repayment. Two of the partners executed a different loan agreement secured by a real estate mortgage containing a dragnet clause. Although the two repaid this second loan, the bank was able to retain the mortgage as security for the partnership loan because of the dragnet clause. This case turned on a statutory question of identity of the parties, but it is notable that the dragnet was applied where the two debts arose from different transactions and that the making parties were different.
Bank of Woodson v. Hibbitts, 626 S.W.2d 133 (Tex. App. 1981), also involved the question of who was bound by the dragnet clause. In finding that the dragnet clause could cover only debts contracted by all three of the original mortgagors, the court decided that mortgages to secure other indebtednesses were effective only against items reasonably contemplated by the parties at the time the mortgage was executed. It said further:
The language of the contract, unless ambiguous, represents the intention of the parties. The intent deduced from this objective matter, not the parties' subjective understandings, is controlling. See Western Oil Fields, Inc. v. Pennzoil United, Inc., 421 F.2d 387, 390 (5th Cir.1970); City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968); Wall v. Lower Colorado River Authority, 536 S.W.2d 688, 691 (Tex. Civ.App.  Austin 1976, writ ref'd n.r.e.). See also First National Bank v. Rozelle, 493 F.2d 1196, 1201 (10th Cir.1974). Testimony as to O.K.'s subjective intent in receiving the future advance clause was a classic violation of the parol evidence rule and clearly inadmissible.
Id. at 134-35 (quoting Kimbell Foods, Inc. v. Republic National Bank of Dallas, 557 F.2d 491 (5th Cir.1977), also construing a dragnet clause).
Finally, there are two cases considering dragnet clauses in the context of third-party liability. The first is Crescent Credit Corp. v. Union Bank & Trust Co. of Montgomery, 51 Ala.App. 683, 288 So.2d 744 (1974), in which a couple executed two notes to a bank, the first of which was tied to a mortgage with a dragnet. They then executed a third note, along with a mortgage on the same real estate, to a credit company. Several years later, the couple's business executed two notes to the bank, which listed its trucks as security, and the husband personally endorsed the notes. The couple also endorsed a third note executed by the business that year. When all of the notes went into default and the bank foreclosed on the realty, application of the proceeds was at question. The court found that if the language of a dragnet clause is broad enough, it can cover the indebtedness of the mortgagor arising from a third person's debt if mature.
In federal court, Kesling v. Bank of America National Trust and Savings Ass'n, 449 F.2d 770 (9th Cir.1971), was a situation in which the Keslings had issued continuing guarantees to the bank with respect to their company, which had loans with the bank. The Keslings later executed a note accompanied by a deed of trust which had a dragnet clause. When the Keslings' company failed, they were liable through their guarantee, and the bank sought the property named in the deed of trust. The federal court found no *405 evidence that the parties intended anything else, so the dragnet could correctly come into play.
As indicated by the foregoing authority, there is no uniform approach whatsoever to dragnet clause problems. The common thread in all of the cases appears to be the parties' intent, but their method of deriving intent diverges widely. We have adopted in this case the contract principle used by several of the courts mentioned above: If the language is clear and unambiguous, then the parties' intent must be derived from the four corners of the document.
In affirming, we nevertheless close with a final point that is as true today as when written by the Supreme Court of Florida in the St. Lucie County Bank & Trust Co. case; namely:
It is a matter of common knowledge that banking institutions in transactions wherein they advance money with or without security dictate the terms upon which such money will be loaned or advanced, and the borrower in such cases must agree to the terms and conditions stated and made by the bank in order to procure the loan. Therefore the court may legally presume that the bank dictated the terms and conditions under which the sum of $2,312.00 was procured by Aylin from the bank and the terms and conditions under which the other notes were deposited by Aylin with the bank as collateral security. When this presumption is indulged in, as it was evidently indulged in by the chancellor, then the rule that, one of the parties to a contract having chosen the language applied and being responsible for any alleged uncertainty and ambiguity must suffer the result of having such language construed against him, may be invoked.
94 Fla. at 534-35, 114 So. at 440. In the instant case the dragnet clause does not suffer from such uncertainty and ambiguity.
Affirmed.
LETTS, J., concurs.
BARKETT, J., dissents with opinion.
BARKETT, Judge, dissenting.
I respectfully dissent. The majority takes a black and white contracts approach to this issue which I believe leads to inequitable, unjust, and unduly harsh results. A reading of the cases cited in the majority opinion indicates that while the courts acknowledge the importance of contract rights, they have recognized that a dragnet clause has great potential for producing completely unexpected consequences. The basic premise underlying enforcement of contracts is that a party should be held to an agreement he or she has made knowingly, freely, and voluntarily. Should a party so agree to a dragnet clause, enforcement should, of course, follow. Most dragnet clauses, however, are really just a side agreement in the main transaction and are subject to being totally overlooked in the excessive boilerplate verbiage of the loan documents. It seems to me that the better approach to the problem is to consider the circumstances of each case. As the majority observes, the common thread in the various cases cited on this issue appears to be the parties' intent, i.e., that the dragnet clause is unfair and unenforceable where the parties did not intend the collateral to stand as security for other than the primary specified debt. I agree with the court in First Security Bank of Utah v. Shiew, 609 P.2d 952 (Utah 1980), that "dragnet clauses are not favored in equity and they should be carefully scrutinized and strictly construed." That court found that the dragnet was boilerplate, that it was not negotiated, and that it had probably never come to the maker's attention until it was sought to be enforced. I suspect that to be the case in most transactions where dragnet clauses catch the collateral from a prior or subsequent loan.
Furthermore, the burden should be on the proponent of the dragnet clause to show that the collateral was intended to be pledged for another debt other than the primary one. Wong v. Beneficial Savings *406 & Loan Ass'n, 56 Cal. App.3d 286, 128 Cal. Rptr. 338 (1976). In my view, the only case in Florida speaking to these issues, St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. 438 (1927), supports the application of these standards to this case. Beyond the document itself, I do not find evidence evincing any intention to pledge the collateral for more than one loan. To the contrary, the parties' stipulation on this issue, which was reiterated as a finding of fact in the final judgment was:
There is no evidence that plaintiffs Robert C. Roy and Joyce S. Roy, his wife, at the time of permitting their coin collection to be pledged as security for payment of the two notes which the Robert C. Roy Agency executed and delivered to Sun Bank, dated September 3, 1981, and July 26, 1982, respectively, had any intention of pledging the coin collection as collateral or as security for payment of any other obligation of the Robert C. Roy Agency. To the contrary, plaintiff Robert C. Roy asserts that he had intended to allow the coin collection to be pledged only as security for those two notes, each of which has since been fully paid and satisfied.
Clearly, the collateral was not negotiated. I cannot agree that the language of the loan, standing alone and absent any evidence of the intent of the parties, should be enforced.
NOTES
[1] The parties recognized at oral argument that "extrinsic" was implicit in their written stipulation and in the final judgment. Without such understanding, the final judgment would be inconsistent on its face  which irregularity neither party suggests to have been contemplated.