**In re Walter Lowell PETERSON, Debtor.**

**FEDERAL DEPOSIT INSURANCE CORP., etc., Plaintiff,**

v.

**Walter Lowell PETERSON, Defendant.**

**Bankruptcy No. 82–712.**
**Adv. No. 82–0791.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 1, 1983.

Robert M. Quinn, Tampa, Fla., for plaintiff.

J. Patrick McElroy, Clearwater, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration is a request to be relieved from the automatic stay filed by the Federal Deposit Insurance Corporation (F.D.I.C.). Unlike other complaints in which plaintiffs seek relief from the automatic stay, the ultimate question here is not whether the plaintiff is entitled to relief from the automatic stay or to adequate protection, but rather what is the correct balance due and owing on a second mortgage on the home of Mr. Peterson, the debtor involved in a Chapter 11 case. The reason for this dilemna is the well known, notorious and unorthodox lending practices of the now defunct Metropolitan Bank (Metropolitan) whose assets are currently liquidated by the F.D.I.C.

The facts relevant to the resolution of this controversy, as revealed by the stipulation of the parties and the documentary evidence are as follows:

Walter L. Peterson, the debtor currently involved in a Chapter 11 case, is the principal and chief executive officer of a corporation known as Community Telephone Directories, Inc., (Com-Tel). On October 8, 1976, Mr. Peterson and his wife borrowed $67,500 from Metropolitan. In connection with this transaction, they executed a promissory note in that amount and granted a mortgage in favor of Metropolitan on their residence. This was a second mortgage on their home. As additional collateral for the loan they also granted a lien on a 1972 Cadillac automobile.

The mortgage document is a printed form and includes what is known as a "dragnet clause" which provides:

Whereas mortgagor desires to secure the payment to mortgagee of said note and of any and all indebtedness or obligation owing by mortgagor to mortgagee, whether due now or in the future, as maker, endorser, guarantor, surety, or otherwise, no matter how evidenced, and any and all additional indebtedness or liability that may, in the future, become due, owing, contracted or incurred by mortgagor to mortgagee as maker, endorser guarantor, surety or otherwise, no matter how evidenced, all to the extent of $75,000.

At the same time, Com-Tel was also indebted to Metropolitan by virtue of several borrowings. On April 15, 1977 and in connection with those borrowings, Mr. Peterson executed a personal guarantee on the indebtedness of Com-Tel owed to Metropolitan. By November 8, 1977 the original personal obligation, represented by the note, in the amount of $67,500, (Plaintiff's Exhibit # 1), was paid in full, and the bank ultimately delivered a satisfaction of that mortgage to the Petersons. (Plaintiff's Exhibit # 5). For reasons not fully explained, the Petersons failed to record the satisfaction of the mortgage. On March 10, 1978 Com-Tel borrowed $100,000 from Metropolitan and, as collateral, Com-Tel pledged all of its assets. No mortgage was executed at this time by the Petersons on their home in connection with this loan transaction, although they were guarantors on this loan.

On April 21, 1980 Mr. Peterson, again in need of funds, borrowed $30,000 from Metropolitan. As part of this transaction, he executed a note on the same date but did not execute a mortgage in connection with the borrowing. Rather, at the request of Metropolitan, Mr. Peterson returned the unrecorded satisfaction of the original mortgage. There is no question that Mr. Peterson intended the original mortgage to stand as collateral for this particular note. The Com-Tel obligation was ultimately reduced to the current principal balance of $58,512.46 plus accrued interest in the amount of $9,420.51 or a total outstanding indebtedness in the amount of $67,932.97. The Petersons also made regular payments on the $30,000 personal note and the current outstanding balance on that note is $6,494.19, which together with the accrued interest of $1,406.34 represents a combined indebtedness of $7,540.53. At no time did Metropolitan apply the payments made by the Peter-

sons on the $30,000 note to the Com-Tel obligation.

It is the contention of the F.D.I.C. that, by virtue of the "dragnet clause" included in the original mortgage, (Plaintiff's Exhibit # 5), the mortgage on Debtor's home secures the combined indebtedness of $75,473.50, which is composed of the $67,932.97 balance remaining on the corporate note and the $7,540.53 balance remaining on the $30,000 personal note.

In opposing the position of F.D.I.C., Mr. Peterson contends that the mortgage secures only the remaining balance on the personal note of April 2, 1970, (Plaintiff's Exhibit # 6), i.e., $7,540.53. This contention is based on the proposition that when the Petersons paid off the original note, (Plaintiff's Exhibit # 1), the indebtedness which was secured by the second mortgage on their home was paid in full and the mortgage was, thus, satisfied. The fact that the Petersons did not record the satisfaction is immaterial, and no lien on their home could be revived unless they executed a new mortgage, which they did not. The Petersons concede that by surrendering the satisfaction of mortgage they did intend to give Metropolitan a second mortgage securing the $30,000 note of April 21, 1970. However, they never intended to grant a lien on their home to secure any of the corporate indebtedness. It is their further contention that they never had been aware of a "dragnet clause", and had they known that the mortgage would secure not only their personal obligation to the bank but also all obligations of Com-Tel, they would not have executed the mortgage.

It is without dispute that Metropolitan did not apply any payments made by the Petersons on their personal note to the obligation of Com-Tel, even after the Com-Tel note came into default. Metropolitan never claimed that the second mortgage given by the Petersons stood as security for any indebtedness of Com-Tel, and in fact, this contention was not raised until F.D.I.C. took over the assets of Metropolitan. While it is true that at the time Metropolitan gave the satisfaction, neither Com-Tel nor the

Petersons had an outstanding loan balance with Metropolitan, there is no evidence in this record that had there been an outstanding balance on the Com-Tel note, Metropolitan would not have given the satisfaction of the mortgage.

■ Having considered the record and the respective contentions of the parties, this Court is satisfied that the position of the Petersons is well supported by the record and by all logical inferences which one might draw from the undisputed facts.

■ It is well established in this State that "dragnet clauses" which purport to secure all debts, past, present and future, between the parties to a security agreement, are generally disfavored and must be strictly construed. The indebtedness, which is allegedly secured by the mortgage in question, is a corporate obligation and the Petersons are only liable on the same by virtue of their guarantees. It is highly unlikely that the Petersons would have been willing to put in jeopardy their personal home just to secure the corporate obligation. Moreover, it is basic law of this State that whatever extinguishes the debts also discharges the mortgage. *Gordon v. Citizens & Southern National Bank of Atlanta,* 56 So.2d 531 (Fla.1952).

In light of the foregoing, this Court is satisfied that the mortgage executed by the Petersons on November 8, 1976 secures only the indebtedness remaining on the April 21, 1980 note in the amount of $7,540.50. The property involved in this controversy is appraised at $150,000. The approximate indebtedness on the first mortgage is approximately $57,000. Thus, it is evident that these Debtors, the Petersons, have very substantial equity in their home. Since there is no evidence in this record that the collateral secured by the mortgage is, in any way, in jeopardy, it is clear that F.D.I.C. is not entitled to obtain relief from the automatic stay, either for cause or lack of adequate protection under Section 362(d)(1), or under Section 362(d)(2).

Accordingly, it is unnecessary to consider to what extent this equity plays any role in

the rehabilitative efforts of Petersons. A separate final judgment will be entered in accordance with the foregoing.