**Christopher J. REDMOND, Plaintiff,**

**v.**

**Joe MENDENHALL and Lex Mendenhall, Co–Executors of the Estate of Patricia Ann Mendenhall, Dec'd, Defendants.**

Civ. A. No. 89–1182–K.
Bankruptcy No. 86–10230.
Adv. No. 88–0026.

United States District Court,
D. Kansas.

Oct. 16, 1989.

Christopher J. Redmond, Wichita, Kan., for Bank. Estate of Donald Hatfield.

MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This case comes before the court on an appeal from the bankruptcy court by the trustee, Christopher J. Redmond (hereinafter, the trustee), of the bankruptcy estate of Donald L. Hatfield (hereinafter, the debtor). The trustee filed an adversary action against Joe Mendenhall and Lex

Mendenhall (hereinafter, the creditor), co-executors of the estate of Patricia Ann Mendenhall, seeking to set aside a transfer to the creditor as a preference. The trustee appeals from the final decision of the bankruptcy court denying his complaint to set aside the transfer at issue. *In re Hatfield*, 101 B.R. 271 (Bankr.D.Kan.1989).

An action to avoid a preferential transfer is a "core proceeding" as defined in 28 U.S.C. § 157. The Honorable Stewart Rose issued his findings of fact and conclusions of law in this core proceeding on or about March 16, 1989. (Dkt. No. 10.) The appellant filed a timely notice of appeal of this decision. (Dkt. No. 15.) Jurisdiction is proper in this court pursuant to 28 U.S.C. § 158, which grants jurisdiction to the U.S. District Court to hear appeals from final judgments entered in core proceedings before the bankruptcy court.

After considering the parties' written and oral arguments, the court is now ready to rule. The court herein reverses the bankruptcy court and finds that the trustee can avoid the transfer in question.

### Findings of Fact

The parties to this adversary proceeding stipulated to the relevant facts necessary for a determination of the issue in this case. These facts were not in dispute before the bankruptcy court and are not in dispute on appeal. The facts as stipulated to by the parties are as follows:

1. Venue is properly laid in this district; the United States Bankruptcy Court for the District of Kansas has jurisdiction of the parties hereto and the subject matter herein and may try this proceeding to judgment.

2. All proper, necessary and indispensable parties are parties hereto.

3. The debtor, Donald L. Hatfield, filed a voluntary Chapter 7 petition for relief in bankruptcy on January 31, 1986, in the United States Bankruptcy Court for the District of Kansas, case number 86–10230.

4. Christopher J. Redmond is the duly appointed bankruptcy trustee of the above-referenced bankruptcy case.

5. On or about November 1, 1985 the creditor, Joe Mendenhall and Lex Mendenhall, co-executors of the estate of Patricia Ann Mendenhall, deceased, filed suit in the District court of Gray County, Kansas against the debtor, among others, in case number 85 C 40.

6. The above-mentioned Gray County case was a foreclosure action instituted against the debtor, Donald Hatfield, on certain real property [which is *not* involved in the present adversary action] located in Gray County, Kansas, more particularly described as:

The Northwest Quarter (NW/4) of Section Thirty–Six (36), Township Twenty–Nine (29), Range Twenty–Seven (27) and the Northeast Quarter (NE/4) of Section Thirty–Five (35), Township Twenty–Nine (29), Range Twenty–Seven (27), all in Gray County, Kansas.

7. On January 21, 1986, the creditor [Mendenhalls] obtained a Decree of Foreclosure against the debtor on the above-described real property....

8. At the time the judgment of foreclosure was entered on the above-described property, the [debtor] also owned title to another tract of Gray County real property [which is the subject of the current adversary action] legally described as follows:

The Northeast Quarter (NE/4) LESS AND EXCEPT: a tract as described as beginning at the Northeast corner of said Northeast Quarter, thence West 53.33 rods, thence South 96 rods, thence East 53.33 rods to the section line, thence North to the place of beginning, and the Southeast Quarter (SE/4) LESS AND EXCEPT: A tract as described as beginning at the Southeast corner and proceeding North 72 rods; West to half mile line; back South 72 rods to the road; cutting off 72 acres of the Southeast Quarter, all in Section Twenty–Six (26), Township Twenty–Nine (29) South, Range Twenty–Seven (27) West, Gray County, Kansas.

9. The judgment of foreclosure was filed and entered with the Gray County

District Court on January 21, 1986, which was within ninety (90) days prior to the debtor's filing of his bankruptcy petition.

10. At the time the judgment of foreclosure was filed the debtor was insolvent.

11. The foreclosure action was instituted by the creditor [Mendenhalls] for the purpose of collecting a debt the debtor [Hatfield] owed to the creditor which debt was incurred prior to the filing of the suit and prior to the filing of the debtor's bankruptcy petition.

12. The judgment lien constitutes transfer to the creditor [Mendenhalls] which enabled said creditor to receive more than they otherwise would receive under the distribution to the creditors in a Chapter 7 liquidation proceeding.

13. The petition instituting the foreclosure action was filed with the Gray County District Court ninety-one days prior to the bankruptcy filing.

The trustee initiated an adversary proceeding against the creditor seeking to set aside as a preferential transfer the judgment lien obtained by operation of the Kansas judgment lien statute [K.S.A. 60–2202 (Supp.1988)] on the tract of Gray County real property which was not the subject of the foreclosure action. On or about March 16, 1989, the Honorable Stewart Rose issued a memorandum opinion finding that the transfer in question was not a preference under the Bankruptcy Code.

1. In pertinent part 11 U.S.C. § 547 provides as follows:

(b) ... the trustee may avoid any transfer of an interest of the debtor in property—
....
(4) made—
(A) on or within 90 days before the date of the filing of the petition;
....
(e)(1) For the purposes of this section—
(A) a transfer of real property ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee;
....
(2) For the purposes of this section, ... a transfer is made—

## Conclusions of Law

In the bankruptcy proceeding below, the parties stipulated to all of the facts necessary to establish a preferential transfer under 11 U.S.C. § 547(b) except for one. The only element at issue is whether the transfer of the debtor's interest in the real property in question was "made on or within 90 days before the date of the filing of the [bankruptcy] petition." To put it another way, the only question in this case is whether the transfer of an interest in debtor's real property should be deemed to relate back to the date the creditor filed suit because of the creditor's judgment lien under K.S.A. 60–2202 (and thereby be outside the 90–day preferential transfer period) or whether, since the creditor had no interest in the real property in question until the judgment was entered, the transfer did not take effect until the judgment was entered (and thereby the transfer would be within the 90–day preference period and be an avoidable preference). The bankruptcy courts in Kansas are divided concerning the exact issue of this case.

Judge Pearson, in *In re Hensley,* 70 B.R. 237, 239 (Bankr.D.Kan.1987), started with the proposition that the time at which the transfer is made under 11 U.S.C. § 547(b) and (e)(2) depends upon when the transfer is perfected under § 547(e)(1)(A).[1] Next, he asserts that the time at which a judicial lien becomes "perfected" is to be determined by state law. In addition, Judge Pearson finds that under Kansas law,[2]

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time; [or]
(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days;

2. K.S.A. 60–2202 (1988 Supp.) provides in pertinent part as follows:

(a) Any judgment rendered in this state by a court of the United States or by a district court of this state in an action commenced under chapter 60 of the Kansas Statutes Annotated shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered.... [T]he lien shall be effective from the time at which the petition stating the claim against the judgment debtor was filed but not to exceed four months prior to the entry of the judgment.

even though the judgment lien is considered contingent and inchoate between the filing date and the judgment date, that such lien is effective to prevent a third party from taking an interest superior to the interests of the transferee. *Id.* at 240. Consequently, Judge Pearson holds that the judgment lien is deemed perfected up to four months prior to the entry of judgment, and thus, pursuant to § 547(e)(1)(A), the transfer is deemed to have occurred when the suit was filed, which was outside the 90–day preference period.[3]  *Id.*

Judge Pusateri, in *In re Proffitt Const. Co., Inc.*, 73 B.R. 288 (Bankr.D.Kan.1987), with almost identical facts, came to the opposite conclusion as Judge Pearson. Judge Pusateri's first assertion is that Congress intended § 547 to establish a uniform 10–day relation-back period for perfection which state law could not circumvent by allowing greater grace periods. He reasoned as follows:

> Section 547 is a self-contained federal statute that treats otherwise perfectly legitimate transactions in the commercial nonbankruptcy world as voidable acts in the context of bankruptcy. The section, to apply uniformly, has its own set of rules, including reference back rules. In order to be uniformly enforced in all debtor-creditor relationships, regardless of the state jurisdiction in which they arise, the transactions are governed by the rules set out in the section and not by the various idiosyncrasies of state legislation. For Congress to have done otherwise would have been an invitation to each state to pass legislation altering the effect of the section, thus allowing its emasculation.

73 B.R. at 290. In addition, Judge Pusateri asserted the above result is supported by the plain language of § 546(b), talking about limitations on avoiding powers, from which reference to § 547 is conspicuously absent:

> The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law

that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

11 U.S.C. § 546(b). Thus, Judge Pusateri concluded, since the creditor had not perfected within the 10–day grace period allowed by § 547(b)(2), the transfer was deemed made when all the acts necessary for perfection of the creditor's interest were completed, i.e., after the judgment, since the creditor's interest was inchoate up to that point. 73 B.R. at 291.

Judge Pusateri also asserted that a hypothetical test was to be used to determine whether a judgment lien was perfected. He asserts the transfer—the taking of a judgment lien on the debtor's property—became effective under K.S.A. 60–2202(a) "from the time at which the petition stating the claim was filed," but that perfection occurred under K.S.A. 60–2202(a) and § 547(e)(1) when a bona fide purchaser "could not" have acquired a superior interest, or when the judgment was rendered. 73 B.R. at 291. He reasons that the existence of a bona fide purchaser for purposes of § 547(e)(1)(A) cannot be determined until judgment is entered, and thus, the event giving rise to perfection is the judgment. Therefore, Judge Pusateri concluded, since the judgment was within 90 days of the filing of the bankruptcy petition and since the judgment was beyond the 10–day relation-back period provided by § 547(e)(2)(A) from the time the suit was filed, that the transfer was not "made" pursuant to § 547(e)(2)(B) until the judgment was rendered. 73 B.R. at 291. As a result, since the judgment was rendered within the 90–day preference period under § 547(b), Judge Pusateri held the judgment lien should be set aside as an avoidable preference.

This court believes Judge Pusateri's opinion states the correct holding for the issue in question. However, his analysis is incomplete.

---

**3.** In the bankruptcy proceeding below, Judge Rose adopted Judge Pearson's analysis, and as a result found that the entry of judgment in favor of the creditor related back to the filing of the petition, and thus, the transfer was outside the 90–day preference period.

In sum and substance, Judge Pearson's holding in *Hensley* is based on the premise that state perfection law controls when the transfer is deemed made under § 547(b) and § 547(e)(2)(A) & (B). That premise is overbroad and does not control in this case for several reasons.

■■■ The general rule is, as Judge Pearson correctly cited, that state law determines *when* a transfer is perfected. 4 COLLIER ON BANKRUPTCY ¶ 547.16[2]. Since federal law nowhere defines perfection, such a rule makes intuitive sense. However, that is not a complete statement of the general rule in this area. The supremacy of state law is confined to determining what constitutes perfection of a transfer. *Id.* The question of whether a transfer is preferential and avoidable by the trustee is governed by § 547 of the code. *Id.; see also, E.F. Corporation v. Smith,* 496 F.2d 826, 830 (10th Cir.1974) ("Time of the transfer is determined by federal law, but state law determines the perfection of the right."). Thus, from the complete statement of the general rule governing this area it can be seen that just because state law deems a transfer as perfected at a certain date does not necessarily mean that the state-controlled perfection date is the date the *transfer* is deemed made for federal bankruptcy law purposes. *Cf. Matter of Compton Corp.,* 831 F.2d 586 (5th Cir.1987) (creditor received an indirect preferential transfer from issuer of letter of credit on debtor's debt, as a matter of federal law, when creditor was issued the letter of credit).

■■ This conclusion is supported by 11 U.S.C. § 547 Historical and Revision Notes (1988), (citing, Sen. Report No. 95–989, U.S. Code Cong. & Admin.News 1978, p. 5787). That Senate Report says that § 547(e)(3) "more than any other in the section overrules *DuBay* and *Grain Merchants.*" Those two cases held, based on a relation-back theory, that the trustee in bankruptcy could not set aside as preferential a security interest in the bankrupt's accounts re-ceivable, which arose within four months of bankruptcy, where the creditor filed its financing statement long before the then four-month preferential transfer period. *Grain Merchants of Ind. v. Union Bank & S. Co., Bellevue, Ohio,* 408 F.2d 209, 216 (7th Cir.1969); and *DuBay v. Williams,* 417 F.2d 1277, 1289 (9th Cir.1969). Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787 says *DuBay* and *Grain Merchants* are overruled because as a matter of federal law "a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3).[4] Thus, notwithstanding the effect of state perfection law, § 547(e)(3) and the legislative history thereto require that as a matter of federal law "a transfer is not made" between the debtor and creditor until some property right can pass in the specific collateral from the debtor to the creditor. It naturally follows from such a requirement, as a matter of federal law, that a transfer is not made between the debtor and creditor until the creditor has acquired some rights in the property transferred.

The creditor in the case before the court, as a matter of federal law, did not and could not have had any rights in the real property in question until the judgment was entered. The judgment lien given to the creditor (by K.S.A. 60–2202(a)) upon the filing of an action in the county where the debtor has real property only establishes an inchoate priority right and not any actual property right in the real property. This is necessarily so because otherwise, if the creditor received a property right by the mere filing of an action, there would probably be a taking of the debtor's property without notice and a hearing in violation of the due process clause of the United States Constitution. Furthermore, the conclusion that K.S.A. 60–2202(a) gives the creditor merely an inchoate priority right (and not a property right) over the debtor's real property within the county upon the creditor filing suit is supported by the fact an Arti-

---

**4.** Section 547(e)(3) provides as follows:
For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

cle 9 perfected, secured creditor receives a similar right in the debtor's after-acquired accounts receivable via a perfected security agreement in such under the Uniform Commercial Code and § 547(e)(3).

In addition, the rule that, as a matter of federal law, no transfer is made until the creditor acquires rights in the property in question is supported by the plain language of § 547(e). That section provides in pertinent part as follows:

(e)(1) For the purposes of this section—

(A) a transfer of real property ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee;

(2) For the purpose of this section ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e) (1988).

As can be seen from the above, as a matter of federal law, § 547(e)(2) defines when a transfer is *made.* Judge Pearson was correct in finding that state law must be referred to determine when the creditor is "perfected" under § 547(e)(1)(A) (when a bona fide purchaser of the property from the debtor cannot acquire a superior interest over the creditor). However, the state law perfection date does not necessarily control the federal law date of when the transfer is deemed made.

Under general rules of statutory construction, it can be seen that the subsec-

tions under § 547(e)(2) are to be applied in sequential order (i.e., subsection (B) only applies if subsection (A) does not apply and subsection (C) applies only if subsections (A) and (B) do not apply). A transfer is *made* under § 547(e)(2)(A) at the time such transfer "takes effect" between the creditor and the debtor, if such transfer is perfected *at,* or within 10 days after, such time. Such a rule seems to assume that an interest may be "perfected" under state law either before or *at* the exact time the transfer "takes effect" between the creditor and the debtor. That is exactly what happened in this case—the creditor's interest in the debtor's real property was perfected under state law *at* (and his priority related back up to four months) the time it took effect between the parties, i.e., when the judgment was entered. Thus, since § 547(e)(2)(A) applies, the other subsections do not need to be analyzed—the transfer was "made" when it "took effect."

Therefore, based on the above it is clear that, as a matter of federal law, a transfer cannot take effect between the parties until the creditor acquires some rights in the collateral. As a result, the transfer in this case did not take effect, for federal bankruptcy purposes, until the judgment was entered, and thus was not made until that date. Consequently, since the date the judgment was entered was within the 90-day preference period under § 547(b), the transfer of the debtor's interest in the real property in question was a preferential transfer avoidable by the trustee. *Cf. E.I. Du Pont De Nemours & Co., Inc. v. Cullen,* 791 F.2d 5, 8 (1st Cir.1986) (in holding that there had been a preferential transfer the court said "a course of events occurring within the ninety-day preference period does not normally, in itself, *both* create a lien *and* make that lien "relate back" to a date several weeks earlier, outside the ninety-day period).

Judge Pearson cites *Matter of Ramco American Int'l., Inc.,* 754 F.2d 130 (3d Cir.1985), as analogous support for his relation-back theory. However, the facts in this case are distinguishable from, and the

rule announced in this case is consistent with, the rule in that case.

For instance, in *Matter of Ramco*, after the creditor received a general judgment against the debtor, he obtained a writ of execution on the debtor's bank accounts from the clerk, which was delivered on the same day to the United States Marshal's Service, before the preference period started. Even though the Marshal's Service did not levy on the bank accounts until after the preference period, the court held that there was not a preferential transfer. Such a holding is not inconsistent with the rule followed by this court because, under the relevant state law, "the superiority of interest as between two judgment creditors is determined ... by the date the writ of execution is delivered to the levying authority." 754 F.2d at 132. Thus, when the writ of execution is delivered to the levying authority, the creditor has received a transfer of a property right in specific property. In contrast, in the present case the creditor did not and could not constitutionally have received a property right in the real property in question until the date the judgment was entered.

The above rationale also applies to the following cases: *In re Wind Power Systems, Inc.*, 841 F.2d 288 (9th Cir.1988) (California law allows a creditor to obtain a temporary protective order (TPO) against a debtor's property after it has shown in an *ex parte* proceeding the probable validity of its claim and the probability of great harm if relief is not granted—the court allowed the transfer to relate back to the TPO); *Matter of Coppie*, 728 F.2d 951 (7th Cir.1984) (the transfer of garnished wages occurred on the date the garnishment order was entered into by the court because the debtor retained no interest in the garnished wages); *In re Conner*, 733 F.2d 1560 (11th Cir.1984) (the transfer occurred on the date creditor caused debtor's employer to be served with summons of garnishment, not when the state court distributed funds to creditor); *Harbor Nat. Bank of Boston v. Sid Kumins, Inc.*, 696 F.2d 9 (1st Cir.1982) (the transfer took place on the attachment date, not the date the creditor's interest was recorded in the real property, where

the creditor recorded its interest the day after it attached).

Furthermore, the rule this case follows is consistent with and furthers the stated purposes of the preference section in the Bankruptcy Code. Such purpose is stated in the legislative history as follows:

> First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

9 Bankr.L.Ed. *Legislative History* § 82:6, pp. 158–59 (1979) (citing H.Rep. No. 95–595, pp. 177–78, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6138). As one court put it, "One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of 'secret liens' by invalidating all transfers occurring within 90 days prior to the filing of the petitions." *In re Arnett*, 731 F.2d 358, 363 (6th Cir.1984); *see also In re George Rodman, Inc.*, 792 F.2d 125 (10th Cir.1986); *In re Gulino*, 779 F.2d 546, 549 (9th Cir.1985); *Deel Rent–A–Car, Inc. v. Levine*, 721 F.2d 750 (11th Cir.1983).

Declaring the entry of the judgment lien in favor of the creditor on the debtor's real property in Gray County as an avoidable preference furthers both of the above stated purposes of the preference section. First, it is a stipulated fact that the debtor was insolvent at the time of the entry of the judgment in favor of the creditor.

Thus, the creditor in this case was "dismembering the debtor during his slide into bankruptcy." In addition, finding the transfer in question is an avoidable preference would "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." It is a stipulated fact that the creditor in this case, because of the transfer in question, was able to receive more than they otherwise would have received under a distribution to such creditors under a Chapter 7 liquidation proceeding.

Finally, even if it is assumed (contrary to the above analysis) that Judge Pearson's starting premise is correct—that state perfection law controls *when* the transfer was made—the Kansas state law does not support the conclusion that there was not an avoidable preference in this case because Judge Pearson's next assertion—that perfection (not merely priority) relates back to the filing date by the judgment lien statute—is incorrect. For example, in *J.I. Case Credit Corp. v. Foos*, 11 Kan.App.2d 185, 187, 717 P.2d 1064 (1986), in finding that the creditor in that case had no underlying security interest supporting its previously filed financing statement, the court said, "K.S.A. 84–9–303 contemplates the existence of a security agreement before a security interest is perfected." Furthermore, the court in *In re Newman*, 71 B.R. 698, 699 (Bankr.D.Kan.1987), said "[a] security interest cannot be considered 'perfected' unless their security agreement does in part 'attach.' "

Although the above cases cite the rules for perfection of property covered by the U.C.C., by analogy such rules are inseparable from those which should govern perfection of real property under the judgment lien statute. In sum and substance, the above cases held that even though a creditor's priority may be established by the first to file a financing statement, that perfection was not complete until the debtor and creditor had entered into some kind of security agreement (an agreement or transfer giving the creditor rights in the specific secured property). Thus, as applied to this case, even though the creditor's priority will relate back up to four months under the judgment lien statute (which serves the state public policy of allowing plaintiffs to avoid fraudulent conveyances by defendants in fear of an adverse judgment), "perfection" on real property within a county is not complete under K.S.A. 60–2202 until the creditor has both filed the action (similar to filing financing statement under the U.C.C.—establishes the creditor's priority) *and* a judgment is entered in favor of the creditor (similar to the security agreement under the U.C.C.— is the first time the creditor actually has any rights in the collateral).

### Conclusion

The creditor did not have any rights in the real property in question until the judgment was entered. Thus, under state law the creditor's interest could not have been perfected until that date. In addition, as a matter of federal law, the transfer could not take effect until the creditor acquired some rights in the property.

Therefore, for either or both of the above reasons the transfer was not *made* under § 547(e)(2)(A) until judgment was entered. Since the judgment was entered within the 90–day preferential transfer period under § 547(b) and all the other elements of § 547(b) have been stipulated to, the trustee has overcome his burden in 11 U.S.C. § 547(g) and may avoid the transfer in question and require the creditor to receive only what it would have received in the bankruptcy proceeding without the preferential transfer.

IT IS THEREFORE ORDERED this 16 day of October, 1989, that the bankruptcy decision is reversed and the trustee may avoid the transfer in question.