**In re CONTINENTAL COUNTRY CLUB, INC., d/b/a William H. Woodall Advertising, Debtor.**

**Peter N. HILL, Fund Representative, Plaintiff,**

v.

**SOUTHEAST BANK, N.A., and Donald Freeman and Ruby Freeman, Defendants.**

**Bankruptcy No. 85–105–BK–J–GP. Adv. No. 87–24.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Nov. 28, 1989.

---

7. See "creditor," 11 U.S.C. § 101(9)(A).

Peter N. Hill, Orlando, Fla., for plaintiff.

Stephen Hilger, Orlando, Fla., for defendant, Southeast Bank, N.A.

Laurie K. Weatherford, Orlando, Fla., for defendants, Donald Freeman and Ruby Freeman.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a complaint to avoid a preferential transfer pursuant to 11 U.S.C. § 547(b).

This proceeding came on for trial on December 8, 1988, before the late Honorable Lionel H. Silberman and before the undersigned on July 18, and July 31, 1989. Upon the stipulation of the parties as to the use of the transcript of part of the trial conducted on December 8, 1988, and the evidence presented at other times, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On September 9, 1983, Continental Country Club, Inc. ("the debtor") executed and delivered to defendant, Southeast Bank, N.A. ("Southeast") a promissory note in the principal amount of $2,750,000, secured by a mortgage on real property commonly referred to as Phase I of Continental Country Club.

2. On September 4, 1984, the debtor executed and delivered to Southeast an unsecured promissory note in the principal amount of $100,000.

3. Between October 17, 1984, and November 14, 1984, the debtor became further indebted to Southeast in the sum of $99,416.16 as a result of overdrafting its checking accounts.

4. On November 14, 1984, the debtor executed and delivered to Southeast a promissory note in the principal amount of $300,000, secured by a mortgage on a portion of the debtor's real property commonly referred to as Phase III of Continental Country Club.

5. From the proceeds of the $300,000 loan, $102,541.67 was disbursed to Southeast in satisfaction of the $100,000.00

promissory note, plus interest, and a total of $99,416.16 was disbursed to Southeast to pay off the overdrafts. The balance of the proceeds, $98,042.17, came to the debtor for operating expenses and closing costs.

6. Exactly ninety days after November 14, 1984, (February 12, 1985) the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

7. On November 14, 1984, the debtor's liabilities substantially exceeded its assets. The debtor's balance sheet dated October 31, 1984, shows assets of $10,682,528 as compared to liabilities of $15,618,550, a deficiency of more than $4,900,000.

8. The Court accepts the testimony of the plaintiff's expert (Richard Tuck) that the fair value of the real property, golf course, amenities, and the water/sewer treatment facility was $6,545,000 on November 14, 1984.

9. Southeast Bank did not offer expert opinion evidence as to the value of these assets.

10. The Court finds the testimony offered by the Freemans' experts, Craig Clayton, William Pardue, and Leonard Landsman, to be overly optimistic as to the fair valuation of these assets as of November 14, 1984. These experts did not use a view of the market absorption of all lots supported by performance records of other mobile home projects or its own sales history.

11. On the date of the petition the debtor's assets exceeded its liabilities. The Summary of Debts and Property signed under oath by Donald W. Freeman ("Freeman") as president of the debtor corporation as of February 12, 1985, demonstrates a deficiency of more than $2,800,000. The granting of the $300,000 mortgage and the payments to the Bank from the loan proceeds in satisfaction of the overdrafts and the $100,000 note enabled Southeast to receive more than it would have under Chapter 7.

### CONCLUSIONS OF LAW

Avoidance and recovery of preferential transfers is governed by 11 U.S.C. § 547(b) that provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The plaintiff has the burden of proving the avoidability of a transfer under § 547(b). 11 U.S.C. § 547(g).

In this proceeding, plaintiff has established through stipulated facts and exhibits that the transfers occurred. A transfer is defined in § 101(50) of the Bankruptcy Code:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption; ...

The legislative history reveals that the definition of transfer is to be construed as broadly as possible. H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6271, 5812–5813. The granting of a mortgage on a portion of the debtor's real property was a transfer contemplated by the statute. So, too, were payments to Southeast from proceeds of the loan closed on November 14, 1984.

That the debtor transferred to Southeast a first mortgage on its property during the preference period is undisputed. Such a transfer involves an interest of the debtor in property for purposes of § 547 of the Bankruptcy Code. *LaMancha Aire, Inc. v. Federal Deposit Insurance Corp. (In re LaMancha Aire, Inc.)*, 41 B.R. 647, 648 (Bank.S.D.Fla.1984).

The issue of whether the debtor had an interest in the loan proceeds paid to the bank at the closing requires an examination of § 550 of the Code governing recovery of preferential transfers. Under § 550(a), the trustee may recover the property or the value of the property from the initial transferee to the extent that a transfer is avoided under § 547.

In this proceeding, the transfer complained of was a mortgage fully securing repayment of a loan specifically for the purpose of paying overdrafts and an unsecured loan. Since the loan was fully secured by the granting of the first mortgage on the debtor's property, the value of the property transferred, i.e. the mortgage, was equal to the amount of overdrafts and unsecured loan that were satisfied.

There exists a substantial body of case law holding that the substitution of a secured loan for an unsecured loan during the preference period, assuming all the other elements of a preference are present, results in a preference to the extent of the value of the collateral transferred. For example, in *Mandross v. Peoples Banking Company (In re Hartley)*, 825 F.2d 1067 (6th Cir.1987), the debtor granted security interests in its real and personal property to a lender who agreed to pay $500,000 directly to another creditor to cover overdrafts. The court held that the creditor who received the $500,000 had received a preference to the extent of the value of the assets pledged to secure the loan. *Id.* at 1072.

In reaching that conclusion, the court cited *Steel Structures, Inc. v. Star Mfg Co.*, 466 F.2d 207 (6th Cir.1972). In that

case, the debtor granted a mortgage on its real estate to secure a loan obtained for the purpose of paying a creditor unsecured as to the debtor. That court held that the loan would not have been made but for the debtor's transfer of a security interest in its property and that the debtor, therefore, controlled the loan to the extent he delivered security. The transfer of the proceeds was held to be a voidable preference in the hands of the creditor to the extent of the debtor's control that is the value of the security. *Id.* at 217–19.

Similarly, in *Virginia National Bank v. Woodson (In re Decker)*, 329 F.2d 836 (4th Cir.1964), the debtor's sister loaned the debtor $8,000, secured by the debtor's corporate stock. The sister transferred the money directly to a bank at which the debtor had overdrawn his account. The transfer to the bank was held to be avoidable to the extent of the value of the stock. *Id.* at 839–40.

In *Matter of Villars*, 35 B.R. 868 (Bankr. S.D.Ohio 1983), a creditor with a pre-existing security interest in the debtor's property loaned money to the debtor for the purpose of satisfying the debtor's obligation to a third party. A joint check was issued, payable to the debtor and the third party creditor. Because the loan was fully secured by the collateral already held by the lender, the payment to the third party creditor was held to be a voidable preference. *Id.* at 868. In accord with the foregoing decisions is *DeRosa v. Buildex, Incorporated (In re F & S Central Manufacturing Corp.)*, 53 B.R. 842 (E.D.N.Y.1985).

Both the transfer of the mortgage security interest in the debtor's property and the payment back to the bank of proceeds of the loan constituted transfers of interests of the debtor in property.

By virtue of the earlier loans and overdrafts, Southeast was a creditor of the debtor on November 14, 1984. The earlier loans and the overdrafts constituted antecedent debts owed by the debtor before the transfer on November 14, 1984, was made.

■ The debtor was insolvent on November 14, 1984. Although the plaintiff enjoys a presumption of insolvency on and during the ninety days immediately preceding the date of the filing of the petition, 11 U.S.C. § 547(f), that presumption is rebuttable. Once rebutted, plaintiff must prove insolvency, and has the burden of proof on that issue. 11 U.S.C. § 547(g); H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 372–375, U.S.Code Cong. & Admin.News 1978, pp. 6328–6331. The Court finds that plaintiff has carried his burden.

"Insolvent" is defined in 11 U.S.C. § 101(31), "... with reference to an entity other than a partnership, [as] financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation...."

The law is substantially uniform that the mandates of fair valuation contemplate an estimate of proceeds realizable within a reasonable time frame through either collection or sale at regular market value. *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 385 (Bankr.D.Minn.1985).

Given these definitions, the manifest weight of the evidence before the Court clearly establishes that the debtor was insolvent on the date of the transfer at issue in this case.

It is within the Court's discretion to weigh the evidence and testimony of expert witnesses. *In re River Hills Apartments Fund*, 813 F.2d 702, 709 (5th Cir.1987). The Court accepts the testimony offered by plaintiff's expert, Mr. Tuck, as to the value of the debtor's principal assets. The Court concludes that the evidence and credible testimony of Mr. Tuck fairly values the debtor's assets at $6,545,000 as of November 14, 1984.

Additional documents of the debtor also support the fact of its insolvency. On October 31, 1984, the balance sheet of the corporation showed assets of $10,682,528 as compared to liabilities of $15,618,550, a deficit of almost $5,000,000.

The parties stipulated that the transfers in question occurred on and within ninety days before the date of the filing of the petition. Accordingly, this element of a preferential transfer has been satisfied.

■ The last element of a preferential transfer requires the plaintiff to demonstrate that the transfers enabled the defendant to receive more than it would have received in a Chapter 7 distribution if the transfer had not occurred. Unless the assets are sufficient to provide a 100 percent distribution to creditors in a liquidation, any creditor holding an unsecured claim who receives a payment during the preference period is in a position to receive more than it would have received in a Chapter 7 liquidation. The plaintiff may rely upon the debtor's schedules and filed claims to show that a 100 percent distribution to unsecured creditors would not be possible. *Flatau v. Tribble's Shoes, Inc. (In the Matter of Lawrence)*, 82 B.R. 157, 160–61 (Bankr.M.D.Ga.1988). The appropriate date for determination of whether a payment is preferential is the date of filing of the Chapter 11 petition. *Neuger v. United States (In re Tenna Corporation)*, 801 F.2d 819 (6th Cir.1986).

■ Having concluded that plaintiff established all necessary elements of a preferential transfer, the Court now turns to the several affirmative defenses raised by defendants, beginning with the assertion that the $100,000 loan and the overdrafts were future advances under the original $2,750,000 mortgage.

A mortgage clause making the mortgage a lien on all sums of money due at the time of the execution or thereafter is known as a "dragnet clause" (or future advance clause) and should be strictly construed against the party preparing the instrument. *Boyette v. Carden*, 347 So.2d 759, 761 (Fla. 1st DCA 1977).

Dragnet clauses are generally disfavored under Florida law and must be strictly construed. *In re Peterson*, 27 B.R. 95, 97 (Bankr.M.D.Fla.1983). Future advance clauses are a subset of dragnet clauses and are accorded similar construction. *Uransky v. First Federal Savings and Loan Association of Ft. Myers*, 684 F.2d 750 (11th Cir.1982).

A mortgage is not intended to stand as security for a second agreement where the dragnet clause was boilerplate language, was not negotiated, and probably never came to the maker's attention until it was sought to be enforced. *Robert C. Roy Agency v. Sun First National Bank*, 468 So.2d 399, 403 (Fla. 4th DCA 1985), citing *First Security Bank of Utah v. Shiew*, 609 P.2d 952 (Utah 1980).

Ambiguous language in a future advance clause must be construed against the drafting party. *In re Bonner*, 43 B.R. 261 (Bankr.N.D.Ala.1984).

The burden of proof is on the proponent to show that the collateral was intended to be pledged for another debt other than the primary one. *Robert C. Roy Agency, supra*, at 404. The guiding principle in the construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage. *Id.*

The intention of the parties is the key factor to be considered in determining whether or not subsequent notes are secured by an open-ended mortgage (or future advance clause). *Cabot, Cabot and Forbes Land Trust v. First National Bank of Ft. Walton Beach, Ft. Walton Beach, Florida*, 369 So.2d 89 (Fla. 1st DCA 1979).

A subsequent debt is secured by a prior mortgage, notwithstanding that the debt is of a different kind or class than the prior debt, where the subsequent debt *specifically* referred to the prior mortgage. *Uransky, supra.*

■ A mortgage does not secure future notes where the notes do not refer to the prior mortgage nor specifically identify the real property covered by the prior mortgage as collateral. *In re Resnick*, 9 B.R. 891, 894 (Bankr.D.Mass.1981).

■ While a mortgage provision as to future debt, which has been labeled as a dragnet clause, may be worded broadly to cover all debts, in addition to the ones specifically secured and may be construed to cover another debt, although such other debt is secured by another mortgage, independent loans secured by different security

are not covered by the initial mortgage. *In re Titus*, 13 B.R. 447, 450 (Bankr.D.Vt. 1980).

■ Where a promissory note executed by debtors contains no reference to previously executed deeds of trust conveying interest in a debtor's real property as security for present, as well as future advances, obligation evidenced by the subsequent note was not secured by the debtor's real property, despite inclusion in loan application of reference to the deeds. *In re Mills*, 39 B.R. 564, 566 (Bankr.E.D.N.D. 1984).

The Court concludes that the overdrafts and the $100,000 note were unsecured obligations and not secured as future advances under the 1983 mortgage.

### CONCLUSION

The Court finds that the $300,000.00 mortgage of November 14, 1984, was a preferential transfer. A separate Final Judgment will be entered by this Court in accord with these Findings of Fact and Conclusions of Law.