In Re William Robert RUDE, Debtor.

**John F. WALDSCHMIDT,**
**Trustee, Plaintiff,**

v.

**PARK BANK, Defendant.**

Bankruptcy No. 89–03684–JES.
Adv. No. 89–0346.

United States Bankruptcy Court,
E.D. Wisconsin.

Dec. 10, 1990.

**534**

John F. Waldschmidt, Milwaukee, Wis., trustee.

Theodore J. Poulos, Poulos, Sengstock & Budny, S.C., West Allis, Wis., for defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The cross motions for summary judgment require this court to decide when Park Bank's claim against the debtor, aris-

ing out of a guaranty of a $168,000 loan, became secured by a mortgage on certain real estate owned by the debtor. If Park Bank's claim obtained secured status on June 12, 1989, when the debtor executed a consolidated note to Park Bank, the transaction is a preferential transfer causing Park Bank's claim arising out of the $168,000 loan to be unsecured. An agreed statement of facts and briefs have been submitted. The parties have agreed that there are no genuine issues of material fact to be resolved. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## FACTS

On February 3, 1987, William Robert Rude ("debtor") purchased a commercial building located at 3145 North 124th Street, Brookfield, Wisconsin ("Brookfield property"). He borrowed $440,000 from Park Bank ("Bank") to purchase the Brookfield property and on February 3, 1987 signed a mortgage note and mortgage.[1] The mortgage note contains the following language:

> This note is secured by a real estate mortgage dated February 3, 1987 on the property located at 3145 North 124th Street, Brookfield, Wisconsin.

Paragraph 5[2] and Schedule A[3] of the mortgage pertain to future advances.

On February 2, 1988, the debtor signed a "Continuing Guaranty" to the Bank for past, present and future obligations of

---

1. The trustee is not challenging the validity of the Bank's first mortgage interest in connection with this $440,000 purchase money loan.

2. 5. Mortgage As Security. This Mortgage secures prompt payment to Lender of (a) the sum stated in the first paragraph of this Mortgage, plus interest and charges, according to the terms of a promissory note(s) or agreement of Borrower to Lender identified on the reverse side, and any extensions, renewals or modifications of such promissory note(s) or agreement, and (b) any additional sums which are in the future loaned by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor and agreed in documents evidencing the transaction to be secured by this Mortgage, plus interest and charges, (all called the "Note").

3. *SCHEDULE A   Present and Future Advances*
The term "Note" as used herein shall also in-

clude, without limitation, any obligations or liabilities (whether direct, indirect, contingent, optional or obligatory, joint and/or several, whether incurred heretofore, herewith, or hereafter and any extension, renewals or modifications thereof) arising out of credit or other financial accommodation granted to, or at the request of Mortgagor. This mortgage may secure obligations in a greater dollar amount than the amount stated in the Mortgage and this Mortgage on the public record is notice that the Mortgage amount set out above is not intended to be indicative of the obligations due Mortgagee hereunder at any point in time. This mortgage shall continue to be a lien on the Property while any obligations of Mortgagor to Mortgagee remain unpaid regardless of when such obligations arose, until such time as the Mortgage is released or satisfied of record.

MA–DE, Inc., a corporation in which the debtor was president, director and a stockholder. The guaranty contained the following provision:

> This guaranty is also secured (to the extent not prohibited by law) by all existing and future security agreements between Bank and any of the undersigned and by any mortgage stating it secures this guaranty.

On November 1, 1988, the debtor as president of MA–DE, Inc. executed a $168,000 renewal note[4] which in part declared:

> This note is a renewal of a note dated 8/1/88 and is secured by a General Business Security Agreement and the personal guarantees of William R. Rude and Tom Mader.

On June 12, 1989, the debtor personally executed a $596,783.68 consolidated note combining the unpaid balance on his personal $440,000 mortgage note with the unpaid balance on the $168,000 corporate note which he had guaranteed. The consolidated note expressly declared:

> This note is secured by a real estate mortgage dated February 3, 1987 on the property located at 3145 North 124th Street, Brookfield, Wisconsin, recorded with the Waukesha County Register of Deeds as Document No. 1401817; Reel 0854; Image 0588.

On August 4, 1989, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code.

On December 20, 1989, the trustee commenced this adversary proceeding against the Bank alleging that it had obtained a preferential transfer for $168,000 when the consolidated note was executed.

### ELEMENTS OF A PREFERENCE

The six elements of a preference under § 547(b) are as follows:

1. A transfer of property of the debtor,
2. To or for the benefit of a creditor,
3. On account of an antecedent debt,
4. Made within 90 days of bankruptcy,
5. While the debtor is insolvent, and
6. With the effect of giving the creditor a greater return on his debt than would have been the case had the transfer not taken place and had there been a distribution under the liquidation provisions of the Code.

2 Norton *Bankr.L. & Prac.* (Callaghan) § 32.08 (1990). *In re Baker & Getty Financial Services, Inc.*, 98 B.R. 300 (Bankr. N.D.Ohio 1989). Only the first and sixth elements are in issue in this case.

### WAS THE EXECUTION OF THE CONSOLIDATED NOTE A "TRANSFER"?

The Bank argues that the execution of the consolidated note did not result in a "transfer" within the meaning of § 547(b) and was "nothing more than a diary of enforceable, secured obligations." It states, in its summary judgment motion, that the February 3, 1987 mortgage on the Brookfield property became security for the $168,000 corporate note before the existence of the consolidated note and beyond the 90–day preference period, "by virtue of the language contained in the mortgage, mortgage addendum and guaranty." Based upon an analysis of these documents together with the $168,000 corporate note and consolidated note and guided by standards of contract construction, the court concludes otherwise.

■ The word "transfer" is defined in 11 U.S.C. § 101(54) of the Bankruptcy Code as:

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

---

**4.** The November 1, 1988 renewal note was the most recent of a series of renewal notes regarding the $168,000 loan to MA–DE, Inc. All are identical in language. None makes any reference to the purchase money mortgage dated February 3, 1987. The $168,000 loan was originally entered into on February 2, 1988, but the original note for this loan was never produced as an exhibit. There has been no allegation by the Bank that the original note specifically stated it was secured by the February 3, 1987 mortgage.

This definition is worded as broadly as possible. S.Rep. No. 989, 95th Cong.2d Sess. 27 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. When the consolidated note was executed on June 12, 1989, during the 90–day preference period, it improved the Bank's position by transforming a $168,000 unsecured obligation into a secured obligation. A creditor's improvement in status from unsecured to secured is a transfer within the meaning of § 547(b). *In re Dakota Country Store Foods, Inc.,* 107 B.R. 977, 992 (Bankr.D.S. D.1989). *See also In re Rubin Bros. Footwear, Inc.,* 73 B.R. 346, 355 (S.D.N.Y.1987); *In re Gruber Bottling Works, Inc.,* 16 B.R. 348, 351 (Bankr.E.D.Pa.1982); *Vogel v. Russell Transfer, Inc.,* 852 F.2d 797 (4th Cir.1988).

The circumstances here are similar to those in *In re Continental Country Club, Inc.,* 108 B.R. 327 (Bankr.M.D.Fla.1989), where it was held that a mortgage obtained during the preference period for a previously existing unsecured loan and for some overdrafts resulted in a preferential transfer. The court in *Continental Country Club* stated:

> There exists a substantial body of case law holding that the substitution of a secured loan for an unsecured loan during the preference period, assuming all the other elements of a preference are present, results in a preference to the extent of the value of the collateral transferred.

108 B.R. at 330.

Based upon the following analysis of the $168,000 corporate note, mortgage, mortgage addendum, guaranty and consolidated note, when viewed individually and collectively, this court concludes that the $168,000 corporate note was not secured by the mortgage covering the Brookfield property until June 12, 1989, when the consolidated note was signed.

■ In construing a contract, a court must ascertain the intent of the parties by the expressed and actual language used. *Matter of Estate of Alexander,* 75 Wis.2d 168, 248 N.W.2d 475 (1977). Where an agreement on its face clearly discloses the parties intent, such agreement must be applied as written. *U.S. v. Ettrick Wood Products, Inc., et al.,* 916 F.2d 1211, 1219 (7th Cir.1990) (citing *Levy v. Levy,* 130 Wis.2d 523, 388 N.W.2d 170, 173–75 [1986]). In the case at bar, the intent of the parties was clearly expressed in the loan documents.

### THE $168,000 CORPORATE NOTE

This note states that it "is secured by a general business security agreement and the personal guarantees of William R. Rude and Tom Mader." It does not state that it is also secured by the mortgage on the Brookfield property. This is a clear expression of the parties' intent that the mortgage was not intended as security for the $168,000 corporate loan.

### THE MORTGAGE

■ Paragraph 5 of the mortgage recites that a future advance is secured by the mortgage only if the documents evidencing the transaction involving such future advance contain specific wording agreeing that such advance is "to be secured by this mortgage." This provision, also commonly referred to as a "dragnet clause," is valid in Wisconsin. By the same token, it is likely to be viewed with disfavor by the courts and must be closely scrutinized. *Capocasa v. First National Bank,* 36 Wis.2d 714, 721–22, 154 N.W.2d 271, 275 (1967).

The limiting language in paragraph 5 of the mortgage, specifying the conditions under which this mortgage secured any future advance, was deliberate. It was, at least in part, incorporated into the mortgage to comply with the Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. and Regulation Z, 12 C.F.R. § 226.1 et seq. Under TILA, a failure to include such language in consumer transactions, under certain circumstances, afforded consumer borrowers a right of rescission. Although the February 3, 1987 transaction in this case was a commercial loan which was not governed by TILA, the Bank nevertheless selected a particular mortgage form which required such recitation as a condition for

the mortgage securing any future advances.[5] The Bank was therefore obligated to comply strictly with the requirements which, for its own reasons, it imposed in the mortgage. Its failure to do so meant that its $168,000 corporate loan to MA–DE, Inc. was not secured by the real estate owned by the debtor until June 12, 1989, when the consolidated note was executed.

## THE MORTGAGE ADDENDUM (SCHEDULE A)

█ The Bank argues that "the clear and unambiguous language of the future advances clause unequivocally demonstrates the intent of the parties" to extend the mortgage to any future indebtedness, which would include the $168,000 corporate loan. The Bank asserts that Schedule A "set(s) forth in particularity the present and future advances clause." Presumably, the Bank also takes the position that, to the extent that paragraph 5 of the mortgage and Schedule A are inconsistent, Schedule A, as a separate attachment, controls.

█ This court recognizes the rule of contract construction that, where part of a contract is written or typed and part is printed, and the parts are apparently inconsistent with each other or leave reasonable doubt as to the meaning of the whole, the written or typed part controls. This rule is resorted to from necessity only when the written or typed words or clauses and the printed words or clauses cannot be reconciled, for otherwise it is the imperative duty of courts to give effect to all of the terms and language of the agreement. Where there is an apparent repugnancy between two parts or clauses, it is the province and duty of the court to harmonize them if possible. It cannot be assumed that the parties intended to insert ineffective provisions. *See* 17 Am.Jur. Contracts § 267, § 271 (1964 & Supp.1990).

Schedule A and paragraph 5 can be read in harmony with each other. Schedule A

only elaborates upon the meaning of the term "Note" as contained in paragraph 5. Schedule A also prescribes that the mortgage may secure debts in an amount greater than the face amount of the mortgage and shall continue until it is released or satisfied of record. But nothing in Schedule A states that the mortgage shall automatically cover all future loans either made or guaranteed by the debtor or that the condition imposed in paragraph 5 for any future loans to be secured by the mortgage had been eliminated.

Solely for the sake of argument, even if paragraph 5 and Schedule A are inconsistent with each other, it is not clear that Schedule A (which itself is a printed form) governs. Moreover, it is well established that doubtful language in a contract shall be interpreted against the drafter of the document. 17 Am.Jur.2d Contracts § 276 (1964 & Supp.1990). *See also Schiller v. Keuffel & Esser Co.*, 21 Wis.2d 545, 124 N.W.2d 646 (1963). *Crescent Corporation v. Proctor & Gamble Company*, 898 F.2d 581 (7th Cir.1990). *Matter of Gladstone Glen*, 739 F.2d 1233 (7th Cir.1984). Here, the Bank drafted all of the loan documents. Future advances clauses, in particular, have been strictly construed against the party drafting the instrument. *Capocasa v. First National Bank*, 36 Wis.2d 714, 720, 154 N.W.2d 271 (1967). *In re Continental Country Club, Inc.*, 108 B.R. 327, 332 (Bankr.M.D.Fla.1989).

## THE GUARANTY

█ The Bank also claims that, regardless of any conditions imposed in the future advances clause of the mortgage, the guaranty contains its own dragnet clause enabling it to be secured by this mortgage. That argument is also unconvincing. A close examination of the wording of the guaranty reveals that it was to be secured by: (1) all existing and future security

---

**5.** The currently utilized WBA mortgage form 428 (7/19/89), unlike the older WBA mortgage form 428 (4/9/86) used in the instant case, eliminates such recitation in commercial loans. The language used in the current mortgage form is: "Any additional sums which are loaned by

lender to any mortgagor, to any mortgagor and another or to another guaranteed or endorsed by any mortgagor *primarily for personal, family or household purposes and agreed in documents evidencing the transaction to be secured by this mortgage* ..." (emphasis added).

**538**

agreements and (2) any mortgage stating it secures *this* (emphasis added) guaranty. It is important to note the distinction in wording between the two types of collateral. The first stated type of collateral deals with personal property as security for the guaranty. Its language is far broader than the second stated type of collateral dealing with real estate mortgages as security and which is involved here. This language difference was not accidental. Its purpose was to be more restrictive when real estate mortgages are employed as collateral for the guaranty. By stating that a mortgage secured *this* (emphasis added) guaranty, it is implicit that the guaranty had to have preceded the mortgage. That did not occur here because the mortgage covering the Brookfield property was executed on February 3, 1987, nearly one year before the guaranty was created. In any event, the guaranty did not satisfy paragraph 5 of the mortgage. It could have done so if the guaranty specifically stated it was to be secured by this particular mortgage. That omission was fatal.

### THE CONSOLIDATED NOTE

The consolidated note was executed on June 12, 1989. This was the first time the Bank complied with the requirement under paragraph 5 of the mortgage to enable the mortgage to secure the $168,000 corporate loan. By then, however, it was too late because this transfer occurred within the 90–day preference period.

In an attempt to overcome this obstacle, the Bank submits that, when the consolidated note was executed, it related back to the date of the original mortgage and mortgage note. The relation back doctrine does not apply in the context of § 547 to permit the transfer to reach back to a point in time beyond the 90–day preference period. *Redmond v. Mendenhall*, 107 B.R. 318 (D.Kan.1989); *In re Four Winds Enterprises, Inc.*, 94 B.R. 694 (Bankr.S.D.Cal. 1988); *In re Barnett*, 62 B.R. 638, 640 (Bankr.D.Md.1986). While there may be a

relation back for purposes of perfection of a security agreement under state law, this doctrine does not apply for purposes of determining if a transfer is preferential. The supremacy of state law is confined to determining what constitutes a perfection of a transfer. That is not the issue here. The question here is whether a transfer is preferential and therefore avoidable by the trustee, which is a federal issue and is governed by § 547 of the Bankruptcy Code. 4 *Collier on Bankruptcy* § 547.16 (15th Ed.1990). In this case, for purposes of § 547, the transfer occurred when the consolidated note was executed, not when the original mortgage and mortgage note were made.

### DID THE TRANSFER ENABLE THE BANK TO RECEIVE MORE THAN IT WOULD OTHERWISE RECEIVE IN A CHAPTER 7 DISTRIBUTION IN THE ABSENCE OF SUCH TRANSFER?

Having concluded that the execution of the consolidated note resulted in a transfer, it follows from the uncontested facts and the following hypothetical chapter 7 liquidation that the Bank was given a distinct advantage over what it would otherwise receive in a chapter 7 distribution.

The Brookfield property is valued at $550,000 and is subject to a first mortgage held by the Bank on which there is a balance due of $429,000. This results in a potential equity of $121,000. There are no other assets in this bankruptcy case. The unsecured claims (excluding the Bank) total approximately $630,000, and the balance due to the Bank on the loan in question is $168,000. If the transfer is not set aside as a preference, the Bank, as a secured claimant, receives the $121,000, and the unsecured claimants receive nothing. If the transfer is set aside, the result is dramatically different, and there will be a dividend to all of the unsecured creditors (including the Bank) of approximately 15%.[6] This

6. $120,000 (preferential transfer of $121,000 less $1,000 of estimated chapter 7 administrative expenses) divided by $798,000 (Bank's $168,000 unsecured claim plus all other unsecured claims totalling $630,000) equals 15.16%.

would result in a dividend to the Bank of approximately $25,200 (15% × $168,000).

## CONCLUSION

The guaranty did not become secured by the real estate mortgage until the consolidated note was executed. Therefore, the execution of the consolidated note resulted in a transfer which enabled the Bank to receive more than it would otherwise receive as an unsecured creditor on its $168,000 loan. Because all of the requisites for a preference have been met, the transfer was a voidable preference and shall be set aside.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

On this date, the court rendered its decision on the cross motions for summary judgment.

Accordingly,

IT IS ORDERED:

1. That the plaintiff's motion for summary judgment is hereby GRANTED.

2. That the defendant's motion for summary judgment is hereby DENIED.

3. That the defendant's mortgage interest in the debtor's real estate at 3145 North 124th Street, Brookfield, Wisconsin, arising out of a $168,000 loan to MA–DE, Inc. and guaranteed by the debtor, is hereby avoided, pursuant to § 547(b) of the Bankruptcy Code. The defendant's claim against the debtor in connection with this $168,000 loan is relegated to the status of a general unsecured claim.

4. Nothing in this order affects the defendant's first mortgage interest with respect to its $440,000 purchase money mortgage note dated February 3, 1987 on the debtor's real estate at 3145 North 124th Street, Brookfield, Wisconsin.